Garland, J.
The Police Jury of the parish of Lafourche Interior, in November, 1842, passed a resolution, directing that a jury of seven freeholders should be appointed, for the purpose of laying out a public road from the bayou Lafourche, “so as to effect a free and easy communication to the bayous Sec, L’Ours and Chackbé,” in compliance with the act of the Legislature, passed in 1818, relating to the public roads in the State. B. & C.’s Digest, 737. Acts of 1818, p. 54. The jury being duly qualified, proceeded to discharge the duties imposed on them, and after various examinations of different routes, fixed upon a line for the road, and made their report, which was confirmed by *123 the Police Jury, and the road ordered to be opened. The complainant being dissatisfied with the decision of the freeholders, both as to the course which the proposed road is to take, and with the damages allowed, appealed to the District Court, as authorized by the second section of the act. He alleges, that the action of the jury is against law and equity. Avers, that a good and practicable road, affording a free and easy communication between the points mentioned, can be had with much less prejudice and damage to himself and other proprietors, of equal convenience to the inhabitants, and at a less expense to the parish. He alleges, that such a road would be preferable to the route selected. He then proceeds to point out three routes, different in some respects from that selected, which will be equally convenient to the public, and less injurious to him. Two of these commence at a different point of departure from that selected by the jury, and follow routes designated, until they come near to the complainant’s plantation, through which he points out different courses that should be taken, in order not to pass so directly through his enclosed lands, as the proposed route would do. The third route which he mentions, commences at the point selected by the jury, and follows it until it approaches the land of the complainant, where he asks, that it shall take a different course through his field from that proposed. He alleges, that if any one of the routes proposed by him should be fixed on, it will be more convenient and less injurious to him and others, than that proposed by the jury ; that two of them would cause very little expense ; but that the third would cause him damage to the amount of $5000. If the route selected should be insisted on, he avers, that his damage will be $> 15,000. He prays for an injunction to prevent the road from being immediately opened; and also for a judgment for increased damages, in case the action of the jury of freeholders shall be approved by the court.
The answer, after a general denial, admits the laying out of the road; its necessity and utility are alleged; assents to a change, which might, perhaps, render it more convenient for the complainant; and then proceeds to aver, that the complainant, when he found that the road must pass through his land, insisted on its passing in a direct line, and that it was at his own sug *124 gestión, that the route was fixed in the direction now complained of.
The cause was submitted to a jury, before whom a mass of testimony was introduced. A number of bills of exceptions were taken, to the admission and rejection of testimony.
It appears that there are a number of inhabitants on the bayous Sec, L’Ours and Chackbé, who are from five to ten miles distant from the bayou Lafourche, which is the navigable stream on which their crops must be transported to market, and on the banks of which the court-house of the parish, and the village where these inhabitants trade and transact their business, are situated. There is no public road from these settlements to the bayou Lafourche ; and the object is to get one. The necessity for the road is undeniable. The complainant owns a large sugar plantation about four miles from the bayou Lafourche, near to, or on which, is a spot called “ the Sycamores,” where all admit that the road must pass, for the purpose of avoiding swamps and water-courses, which are difficult to cross. To reach this point, it is necessary to pass over the complainant’s land in some direction. That selected by the jury of freeholders is nearly in a direct course through the cultivated lands, and divides the tract unequally, putting the sugar house on the smallest portion, and separating it from the main plantation, but not from the other buildings on the place. The proposed road will run from twenty to thirty arpents through the field and over good ground, and the jury allowed twenty-five dollars for each running arpent, the road to be only thirty feet wide.
On the part of the complainant several witnesses were examined, who were requested by him to view the premises and proposed routes, and they have given their opinions and observations in evidence. These witnesses admit that the proposed route selected by the jury is as good, perhaps better than any other, for the purpose intended; but they say, that it will injure the complainant more than any other. They estimate the damage at a rate far beyond that fixed by the jury, some of them fixing the amount as high as $8000. The reasons they give for making such an allowance, are not stated with much detail. In fact, they all say, that no estimate of particular items was made ; but that a *125 conclusion was reached by general observation as to the labor necessary to construct new fences, to make new ditches and drains, to remodel the general divisions of the cane field into squares or other figures, the danger of the introduction of the coco grass, and other causes too numerous to be herein fully stated. On the part of the Police Jury, the whole jury of freeholders were examined at great length, as were several other witnesses who were acquainted with the localities. The former persisted in the opinion given in their report, as to the route designated being the best for all concerned, in which they are sustained by other witnesses. They also say, that the compensation allowed, is very sufficient for any injury the complainant may have sustained.
The parol testimony fills upwards of sixty closely written pages, consisting of details as to the elevation of ridges of land, the depth and number of the swamps and bayous, the facilities and difficulties of making roads on the various routes proposed, the interviews and negotiations between the freeholders and the complainant, and many other circumstances, which, if recapitulated, would be unintelligible to anyone not acquainted with the localities. No map or diagram comes up with the record, yet references are repeatedly made to lines and courses, bearing to nearly every point of the compass. From the difficulty we have had in understanding and applying the testimony, we can well imagine the embarrassment and difficulty of the Judge and jury, before whom the cause was tried. In a matter involving so many local details, it is impossible for any one who has not himself seen the ground, to form an accurate opinion. Some of the jury who tried the case were probably acquainted with the topography of the proposed routes, as were the witnesses who examined them at the instance of the complainant; but the verdict of seven citizens, themselves owners of real estate, and most of them planters, acting under an oath so strong and solemn as that required of them, ought not to be disregarded except for the most cogent reasons, in a matter to which their particular attention has been drawn, and which it seems they had under consideration for several months.
The jury, after a most tedious trial of nearly two weeks, found a verdict in favor of the complainant, “ rejecting and setting aside *126 the road traced by the jury of freeholders whereupon the Judge decreed, that the road traced from the bayou Lafourche across the Bibb plantation, as described in the report of the jury of freeholders, until it leaves the rear of the complainant’s plantation, be annulled and set aside, as not conformable to law, and the Police Jury were ordered to desist from opening that portion of the road. From this judgment that body have appealed.
Before proceeding to consider the principles of law, we will state the conclusions drawn from the testimony. It appears, that the complainant is unwilling to have any road through his land at all; but, if it be unavoidable, he wishes to have it placed on ground as little valuable as possible, and to be made so circuitously as not to interfere with his own arrangements. If interfered with, the object then appears to be to make as much money as possible out of the parish. The convenience of the public, and of those citizens who are excluded from a navigable stream, and from communication with their seat of justice and market town, seems to have but little weight.
Our Code provides, that no one shall be divested of his property , unless for some purpose of public utility, and on consideration of an equitable indemnity, which includes not only the value of the property, but the damages caused' by taking it. Civ. Code, art. 489. But this equitable indemnity does not mean an extravagant allowance, to be made out of the public coffers for imaginary injuries. The ancient laws and usages of the country required of the proprietor of every tract of land, to furnish a road for public use. These have in some degree been modified by our legislation; but the great principle remains at the foundation, that a portion of each individual’s private rights must sometimes be yielded for the public good and convenience. A single individual, whose estate is enclosed by others, has a right under articles 695 and 698 of the Code, to claim a passage over the land of his neighbor, upon a proper indemnification. In. exercising this right, as little injury as is compatible with the object, must be done ; but a practicable passage must be afforded, and a reasonable convenience consulted on both sides. Articles 701 and 703, show that proprietors of lands fronting on a river or stream, are bound to give a road on or near its border, even without compen *127 salion; and so says the act of 1818. The necessity for good roads is as important, if not more important, at a distance from the water courses, than on their banks.
We coincide in opinion with the District Judge, that the Legislature has wisely entrusted to the Police Juries of the different parishes, the power of laying out and establishing public roads. None but owners of landed property can be appointed members of the jury to report on the projected route. Their interests and sympathies are generally the same with other land owners. They are sworn to do justice; and while the advantage of the public is to be consulted, they are to do as little injury as possible to individuals. Enclosed and cultivated lands are not to be wantonly entered upon or taken from a proprietor, when a practicable and good road can be had, by taking a different direction. On the other hand enclosed lands are not sacred; and their proprietors have no right to subject the convenience of a community to their caprices or interests, or to compel its members to toil through swamps and across large streams, to construct a road ou a circuitous route, which, when finished, will be impracticable during a large portion of the year. The law has also given to every citizen through whose land a road is laid out, a right of appeal to the District Court, either as to the course it is. to take, oías to the damages assessed. The supervising power, as to the course of the road, we think ought to be cautiously exercised, as it will most generally involve questions not judicial, but of police ; and the proceedings of the jury of freeholders, and of the Police Jury, should be sustained, unless manifestly unjust. If a court and jury undertake to revise them, particularly as to the location of the route, it should only be done upon the most accm rate information, obtained by experts properly qualified, accompanied by plans and diagrams, enabling the judicial tribunal to ' act advisedly. The judgment of a sworn jury, acting upon their own observations, made on the ground, should have much weight, and prevail over the loose opinions of those who incur no responsibility, are not sworn, and make an ex parte examination at the request of an interested person.
The District Judge instructed the jury, that in this case, the complainant had a right to contest with the Police Jury the route *128 selected before reaching his land, and to show, that another might have been selected on the property of other individuals, equally beneficial to the public, and which, when it reached complainant’s property, would be less injurious to him. His reason for this instruction was, that an appeal is allowed, as well in relation to the course the road is to take, as to the damages; and that the party might show, that if the road had commenced at a different point, it need not touch his land at all. In this, we think, the Judge erred ; and this error led him very logically into another, which we will hereafter notice. The words of the law are, “ that whenever any individual, through whose land a road laid out as aforesaid shall pass, may be dissatisfied with the decision of the freeholders laying out the same, either as to the course the same is to take, or the damages to him assessed,” he may appeal, &c. We are unable to see in these words any thing authorizing the complainant to contest the whole line of the road, and to say, that if the freeholders had commenced their operations at a point, two or five miles from the one they did, that he would not have been incommoded or injured, and that the public would have been as well accommodated. Such an interpretation would lead to interminable difficulties, and keep the Police Jury in continual contests in relation to any route that might be selected. Every person on whose land a road may have been laid out, would say, if you had gone on the land of my neighbor, the public convenience would have been as well promoted, and nó damage have been done tome. The appellate court and jury sanction this appeal; and when the Police Jury attempt again to make a road on the indicated route, a new opponent presents himself, and the same argument and scene are repeated, with a similar result. We think the complainant must be confined to contesting the route traced through his own land. If he can show one less injurious to himself, practicable, and reasonably convenient, it should be adopted.
The next error in the charge of the Judge, was a consequence of the one just noticed. He told the jury that, if they should think any of the routes indicated by the complainant preferable to the one selected by the jury of freeholders, they had no right to say so, and direct the road to be made on that route, but must *129 merely find a verdict for the complainant, and reject the road selected. The reason given for this was, that there might be persons interested in contesting this other route, who were not before the court, and that their rights must not be prejudged. The Judge said, it would be very convenient if another route could be selected by the court and jury ; but that the law was defective in that respect, and nothing could be done. We do not think there is any defect in the law, as long as it is confined to the parties litigant. The error is in the application of it, and in permitting the complainant to travel beyond his own boundaries, and to contest what was properly the business of others, without making them parties. Suppose Bibb to be willing that the road should pass over his land, or, whenever it may be heard, that his opposition to its course be overruled — would it not be strange, after such consent or judgment, that the present complainant should be permitted to say, that the road should not run on the route agreed upon by the parties, or ordered by the court, because if it did, it would reach his land at a point, and consequently pass through it in a direction, more injurious and inconvenient than if another route had been chosen. The effect of the doctrine would be, to subject the public convenience and will to that of a single individual, who may choose to isolate himself, and, at the same time, cut off a whole community from intercourse with their fellow citizens, and deprive them of the facility of getting their produce to market, simply because an individual happens to have possession of one of those ridges or slips of high land so common in the alluvial lands of this State, over which, it is sometimes the case, that the only practicable route can be obtained. This case strongly illustrates the impropriety of permitting a single individual to contest the whole line designated for the road. The plantation of the complainant, as we have stated, is about four miles from the bayou Lafourche ; the road is to go a considerable distance beyond his plantation ; and no one complains of it. Bibb, who owns the plantation on the bayou, where the proposed road commences, 'has also made opposition. The owner or owners of the land between him and the complainant, offer none. Bibb’s cáse does not appear to have been tried at all, yet the jury, under the charge of the Judge, find a verdict setting aside the whole *130 road, thus virtually trying Bibb’s case, although not before them; and also rejecting a great portion of a route which no one opposed, but all approved. The District Judge appears to have discovered the conclusion to which this verdict would lead} and when he gave his judgment on it, only set aside a part of the route, to wit, from the Lafourche to the rear of the complainant’s .plantation, being silent as to the remainder. Both Bibb, and the Police Jury have a right to have the issues between them tried ; and suppose that another jury, after hearing the evidence, had found that Bibb had no reason to complain, and had set aside his opposition, in what position would the case be ? There would be a verdict against Bibb, and, possibly, from the evidence, a correct one ; and we should have it nullified by one in favor of the complainant, who was no party to that proceeding. The judgments would thus contradict each other ; but if each one be confined to the limits of his own property, or all be made parties when it is attempted to go beyond it, no such result would probably occur.
The Judge should, in our opinion, have told the jury that the complainant, upon his single opposition, without making any other party than the Police Jury, must be confined to contesting the opening of the proposed road within his own limits; that it was not competent for him to indicate or select routes on the lands of others, without bringing them before the court. That upon the issues made, it was competent for the complainant to point out any one or more routes across his plantation, reasonably convenient to the public and practicable, and less injurious to himself, and if the jury should so find, that such other route should be substituted for that selected by the jury of freeholders, and the road made on it. That, as a general rule, the most direct and best route should be selected ; but that this rule is subject to exceptions, one of which is, that too much injury is not to be inflicted on private individuals. That, therefore, where a direct course would cause great damage, the road should approximate to it as near as it can, under all the circumstances.
With our views of the case, we think it should be remanded for a new trial; and this makes it necessary that we should decide upon the bills of exceptions.
*131 The first, is, to admitting the complainant to give in evidence the opposition made by Bibb, to the road being opened through his land. The .1 udge states, that he admitted it “ to prove rem, ipsam,” and also to show, that other persons contested the route selected by the freeholders. The counsel for the Police Jury excepted to the admission of the document; but, subject to his exception, admitted that Bibb had taken an appeal from the, location of the road on his upper line, the distance of eighty arpents, that is, over his own land. This document does not come up with the record, and we cannot say whether the Judge was correct or not; but if the only object of introducing the paper was to prove its existence, and that a similar suit was pending in the name of another person, we cannot now see what influence it could have had on the jury.
The next bill was taken by the counsel of the Police Jury, to the refusal of the Judge to permit Beatty, a witness for that body, who was under cross-examination, to answer as fully as he desired to a question propounded to him. The question was, would the complainant have to haul his wood or cane along the road proposed ? The witness answered, that the greatest part of the cane would have to be hauled across the road, to get to the sugar house, and that neither it, nor the wood, would necessarily be hauled on the proposed road. The witness then proposed to add : “ that it would then be necessary for him, (Cross) either to pursue a circuitous route for hauling his sugar over a bad road, or else to haul it over the middle of his plantation, the carts passing and re-passing over the public road, with coco; and that from his knowledge of the plantation, it would be Cross’ interest to pass through the field instead of along this circuitous route.” This part of the answer quoted was objected to by the complainant, as not responsive to, nor necessarily connected with the question. The court rejected it, saying, if it were legal testimony, it could be elicited by a direct question put by the counsel of the Police Jury; but that it was not connected with or responsive to the question. We think the court erred in rejecting the answer. The object of the testimony previously submitted, was to show, that the proposed road would be of little or no service to Cross in hauling his cane and firewood ; and the object of the witness, *132 who was one of the jury of freeholders, seems to have been to show, that although the road was not indispensable for the particular purpose mentioned, yet that, for another very important one, it would be of service to him. The answer was perhaps not directly called for by the words of the question ; but when we consider the object which the party had in view when he asked it, the fact of the witness being under cross-examination, where something more of latitude is allowed than in a direct examination, and the suggestion of the Judge that a direct question from the other side might bring out the same reply, we do not see that any positive rule of evidence has been violated. It seems rather a question of time — at whose instance the answer should be given, than one of law ; and, under the circumstances, it ought not to have been withheld from the jury.
The next bill of exceptions was taken by the Police Jury. They offered as evidence, a petition presented by the complainant, in 1841, to the Police Jury, supported by parol testimony to show the action of a committee on it, and the selection by the complainant, at that time, of the road now consented to in the answer. The latter objected to its introduction, and the court sustained the objection, saying, that the only questions before the court were the direction of the road and the damages; that what the complainant might have thought advantageous in 1841, he might not consider so in 1843 ; that a change of position in his property, and other circumstances, may have operated a change of opinion in him. We think the Judge again erred. The evidence was certainly important upon the question of damages, and also upon that of the direction of the road ; for the court and jury certainly had a right to alter it within complainant’s limits, more particularly as the Police Jury consented. If there has been any change in the property or circumstances, it is competent for the complainant to show it, and thus destroy the effect of the evidence.
The next bill of exceptions was taken by the counsel for the complainant, to the opinion of the court rejecting a question put to a witness named Navarre. He was asked if a better road could not be obtained than that laid out by the Police Jury, by starting at ten arjpents on the western line from the southwestern *133 corner, thence northeast to the Sycamores? The objection was, that this was designating a route not mentioned in the opposition, and was taking the Police Jury by surprise. From the terms of the question we infer the whole route mentioned in it, is within, or on the complainant’s boundaries. If so, we think the Judge erred, as we believe it competent for the complainant to prove that anywhere within his limits a convenient and good road can be had less injurious to him than the one selected, without specially indicating the route in his opposition ; but the court, and jury should be careful in weighing such testimony, and if necessary to elicit the truth, should have an examination made by competent persons.
The next bill of exceptions was taken by the Police J ury, to the decision of the Judge permitting evidence to go to the jury, as to whether a better road could or could not have been obtained, had the jury of freeholders commenced at a different point on the Lafourche, and taken a different course over the lands of others. This bill covers all the evidence of that description, and we have expressed an opinion upon the point in our comments on the charge of the Judge to the-jury. We think he should have rejected all such evidence, unless the proprietors of the lands over which the new routes pass, were parties. Then it might be proper; and upon hearing all interested, the appellate tribunal could advisedly carry the law into effect, by changing the route if it were deemed necessary.
The next bill of exceptions was also taken by the Police Jury to the refusal of the Judge to permit George S. Guión, to answer a question propounded to him in relation to the different routes through the complainant’s plantation. The witness had been asked, and had given his opinion upon a variety of matters connected with this controversy. He was asked to give another, which we think ought to have been permitted, and that its effect should have been left to the jury.
The next bill of exceptions was taken by the counsel for the Police Jury, who objected to all evidence going to show that any other route would cost less than the one designated by them, as it was a question which concerned only the public and themselves, and the complainant had no right to inquire into it. The Judge *134 admitted the testimony, and we are of opinion that he did not err. The law gives the court and jury a power of revision, as well over the damages as the course of the road ; and all proper testimony to enable them to exercise it was admissible.
Stevens and Nicholls, for the complainant.
Beatty and Thibodeaux, contra.
The last bill is disposed of, in our decision in relation to the charge of the Judge to the jury.
It is, therefore, ordered, that the judgment rendered herein be annulled and reversed, the verdict of the jury set aside, and the case remanded for a new trial, with directions to the Judge to charge the jury as herein stated, and in the reception and rejection of evidence to be governed by the principles and directions stated in this opinion, and in other respects to proceed according to law ; the appellee paying the costs of this appeal.