(54 South. 984.)

No. 18,140.

LEONARD v. GARRETT.

(Jan. 3, 1911. On Rehearing, May 8, 1911.)

*(Syllabus by the Court.)*

1. ADVERSE POSSESSION (§ 100*)—PRESCRIPTION—EVIDENCE.

Actual possession of part of a tract of land as a homestead under an apparently valid title, translative of property, to the whole, with the intention to possess according to the title, is such possession of the whole as will enable the possessor to acquire a perfect title by the prescription of 10 years.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. § 100.*]

2. ADVERSE POSSESSION (§ 96*)—PRESCRIPTION—EFFECT OF CIVIL POSSESSION.

Civil possession follows possession by occupancy until ousted by adverse actual possession.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 96.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by A. H. Leonard against L. P. Garrett. O. B. Christian and the Gulf Refining Company intervened. Judgment for defendant and the interveners, and plaintiff appeals. Affirmed.

Wise, Randolph & Rendall, for appellant. D. Edward Greer, Thigpen & Herold, and F. C. Proctor, for appellees.

PROVOSTY, J. In 1882 John Ashlin secured from the United States a patent to a homestead of 160 acres, within which was included the land in controversy in this case, namely, lot 2 of section 31, township 20 N., range 15 W., containing 22.48 acres.

From that date to the present time, that homestead has been occupied, and some 30 or more acres of it cultivated, by Ashlin and his successors in title, either personally or through tenants. In 1888 the daughter and sole heir of Ashlin sold the place to E. C. Christian. Christian died intestate, and the undivided half interest of his children and heirs in this homestead was adjudicated to his surviving widow, Mrs. C. B. Christian. On the 10th day of December, 1908, Mrs. Christian sold an undivided half interest to the Gulf Refining Company, and made an oil and mineral lease of the other undivided half interest to the same company.

Plaintiff derives his title as follows: In 1884 a list of lands was approved to the state of Louisiana by the Secretary of State of the United States as swamp and overflowed lands under the swamp land grant of 1849. In this list was included the land in controversy. In 1887 the state of Louisiana made a deed and patent in favor of John McEnery to a list of lands, among which was included the land in controversy. The heirs of McEnery sold a list of lands, among which was the land in controversy, to L. M. Carter, who sold same to the plaintiff in this suit. Plaintiff does not pretend that he or any of his authors in title has ever had possession of any part of the land in controversy; not even such possession as would result from possession of part with title to whole.

The title of the defendant, Garrett, is derived as follows: In 1884 one Phillips sold to one Wheedon several tracts of land, among which was the land in controversy. Wheedon sold to one Welfley, and Welfley, in 1901, to C. L. Fain. In this same year 1901, or the year after, Fain fenced in a part, or perhaps all, of the land in controversy, and tried to cultivate it; but abandoned the attempt, the land being too wet and marshy. The fence remained on the place. In 1908 Fain sold to Garrett, the defendant in this suit.

The present suit is a petitory action. It was filed on the 11th of December, 1908, the day after the sale by Mrs. Christian to the Gulf Refining Company. The plaintiff claims title by virtue of the patent from the state to McEnery, and makes the patent part of his petition. His petition contains also the following allegation:

"Your petitioner shows that said land constituted a part of the bed of a navigable lake, and as such belonged to the state of Louisiana, and never constituted any part of the United States, but that said land was surveyed under the direction of the land officers of the Department of the Interior of the United States in the year of 1871, and a map thereof with field notes showing the land to be swamp and overflowed land was made and filed with the proper officials of the said department, and was by them approved and made part of the records of the department."

The defendant, Garrett, interposed the following exception of no cause of action:

"In the above entitled and numbered cause now comes the defendant, and, without answering the plaintiff's demand, shows that the plaintiff's petition discloses no cause or right of action in the manner and form as therein set forth, for the reason that said plaintiff alleges that the land in question constituted a part of a navigable stream and as such belonged to the state of Louisiana, and never constituted any part of the domain of the United States, and that plaintiff's petition further alleges acquisition of title through Jno. McEnery by patent from the state of Louisiana, which said patent is annexed to the plaintiff's petition as part thereof.

"Your appearer shows that on the face of the said patent to McEnery it is specially recited that the land is conveyed to McEnery by virtue of contract between McEnery and the government of the state of Louisiana based upon the Act No. 23 of the General Assembly of Louisiana of the year 1880, which said act and which said contracts specially provided that McEnery was to receive lands in payment for his services only in securing patents from the United States to lands previously donated by the federal government to the state of Louisiana.

"Your appearer shows that if the said lands constituted a part of a navigable stream and never constituted a part of the public domain of the United States, as plaintiff alleges, then that the patent issued to McEnery was illegal, null, and void, and that the register of the land office was absolutely without power, jurisdiction, or authority, according to the face of the said patent, to issue same, and that the said McEnery never acquired any right, title, or interest in said property or conveyed any title to plaintiff."

That exception was referred to the merits.

Garrett then answered, setting up his title derived as aforesaid through Fain, Welfley, Wheedon, and Phillips, and pleaded the prescription of 10 years acquirendi causa.

Subsequently to the filing of this answer Garrett sold his right, title, and interest in the property to the Gulf Refining Company.

Mrs. C. B. Christian and the Gulf Refining Company intervened in the suit. This they did by separate, but similar, petitions, represented by same counsel. They set up their title derived as hereinabove stated; and then proceeded to allege that their said title and that of plaintiff were derived from the same author, the United States, and that the plaintiff and his author, the state of Louisiana, could not be allowed to contest the title of said common author; in fact, were estopped from doing so; and that their (interveners') said title was superior to plaintiff's, since it was prior in date.

The Gulf Refining Company further alleged that it had acquired the rights of the defendant, Garrett, and that, in case the title acquired through Mrs. Christian was held not to be valid, "then, and in the alternative, your appearer shows that it has title under deed from L. P. Garrett by virtue of prescription of 10 years, as pleaded in the answer of Garrett."

Plaintiff contends that the Christians, or their assigns, the Gulf Refining Company, cannot rely in the suit upon prescription, for the reason that a title by prescription cannot serve as the basis for a petitory action.

In Bernstine v. Leeper, 118 La. 1100, 43 South. 889, this court said:

"The contention of defendant's learned counsel that a petitory action cannot be based on a title acquired by prescription can hardly be serious. Of course, a party out of possession cannot acquire by prescription; but if he loses his possession only after having acquired title by prescription, it would be strange if he could not vindicate this title as against a mere possessor. A title by prescription is a title, as much so as any other, and a man does not lose his title when he loses possession."

In opposition to this, the plaintiff cites the cases of Green v. Hudson, 7 La. 123; Kemp v. Womack, 1 Rob. 370; Waddill v. Walton, 42 La. Ann. 763, 7 South. 737; Lambert v. Craig, 45 La. Ann. 1110, 13 South. 701; Slattery v. Heilperin, 110 La. 91, 34 South. 139. Those were cases where the party invoking

prescription had never had possession. When it comes to relying upon prescription, there is a vast difference between having never had possession, and having had it for 10 years with title, or 30 years without title. According to the doctrine advocated by plaintiff, if a trespasser were to gain possession of some old homestead and hold it for one year, and thereby acquire a right of possession, the previous possessors of this homestead could not maintain the petitory action to recover it, although, before losing possession of it to this trespasser, they and their forebears had occupied it as their home for over 1,000 years, and had had title to it by the prescription of 30 years for more than 970 years.

A better reason why the interveners cannot rely upon prescription as founded upon the Ashlin patent is that they have not pleaded that prescription; and that the court cannot supply the plea. The only prescription they have pleaded is that founded upon the title derived by Garrett from Phillips.

The latter prescription cannot prevail, for the reason that the possession in support of it began only in 1901 or 1902, less than 10 years before the institution of this suit. The Gulf Refining Company cannot join the possession under the Phillips-Garrett title to that under the Ashlin-Christian title, for it is only possessions under the same title that can thus be joined for filling out the prescriptive period. Civ. Code, arts. 3493, 3494.

Of the Garrett title, apart from prescription, all that need be said is that Phillips had no title, and could convey none.

Coming to the patents, there is no denial that the land in question was the bed of a lake, belonging to the state of Louisiana by virtue of her sovereignty, at the time the said two patents issued, and that it never belonged to the United States; and that, therefore, the Ashlin title was a non domino. But the interveners contend that the state of Louisiana, having accepted title to this land from the United States, would be estopped from contending that the United States was not owner, and that the same estoppel operates against the plaintiff, who holds under the state; that plaintiff is further estopped by the recital, on the face of his title, that this land was acquired by the state from the United States; and, finally, that, the respective titles of the litigants having the same origin, the plaintiff is estopped from contesting the title of this common author.

Interveners further contend that the deed by the state to McEnery, as appears by its own recitals, was executed under the provisions of Act No. 23 of 1880, according to which McEnery was to be authorized to represent the state in obtaining the approval to the state by the United States government of all the lands to which the state was entitled under the swamp land grants, and for his services was to receive one half of the lands of which he would thus secure the approval to the state; and that, therefore, plaintiff would nullify his own title by showing that the said land was not acquired by the state under said swamp land grants.

Dealing with this last contention first, we will say that it confuses between the reasons, or motives, which led the officers of the state to issue this patent to McEnery and the patent itself. If these officers were in error in issuing this patent (as, indeed they evidently were), this may be good ground for setting aside the patent at the suit of the state; but, until the patent is thus set aside, it continues to exist, and to operate for conveying whatever title the state may have had.

"Patents are sometimes issued by mistake, when the officer has no authority in law to grant them. * * * But a patent * * * is conclusive until set aside by some judicial tribunal." Stone v. U. S., 2 Wall. 535, 17 L. Ed. 765.

"Our understanding is that only the state can sue to annul such patents." Frellsen v. Crandell, 120 La. 712, 45 South. 558.

The other contention of interveners—that the state and her grantee, the plaintiff, are estopped from contesting the title of the United States—has no greater merit. The case presented is simply that of an owner of property who has sought to acquire the property from another person, erroneously supposing this other person to be the owner; and who, on discovering the error, asserts his own good title as against a third person, in whose favor this supposed owner had previously made a deed. No doubt, a litigant cannot contest the title of the person from whom emanates the title upon which he is relying in the suit, thereby, as it were, contesting his own title, but in the present case the plaintiff is not relying upon the title derived from the United States. He disclaims in his petition any and all intention of doing so. He alleges that he relies solely and exclusively upon the title which the state possessed by virtue of her sovereignty. A litigant does not lose his good title, or estop himself from asserting it, by acquiring a bad title from another person erroneously supposed to be the owner.

"By accepting a deed of conveyance in fee and going into possession a grantee is not estopped to deny the title or seizin of his grantor, unless he claims under the deed." 16 Cyc. 687.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of the plaintiff, Albert H. Leonard, and against the defendant, L. P. Garrett, and the interveners, the Gulf Refining Company and Mrs. E. C. Christian, decreeing the said plaintiff, Albert H. Leonard, to be the owner of the land in dispute in this case, namely, lot No. 2 of section 31, in township 20 N., range 15 W., containing 22.48 acres, and entitled to the possession of same, and that the interveners pay the costs of this suit.

## On Rehearing.

MONROE, J. [1] In the opinion heretofore handed down it was held that the title, by prescription, set up by Mrs. Christian could not be maintained, not because a title by prescription, once acquired, is not as good as any other, but because the prescription relied on as showing the acquisition had not been pleaded and the plea could not be supplied by the court. Thereafter our attention was called to the fact that the plea had been made and appears in the transcript, but, by some mischance, had been overlooked, and the rehearing was granted. Upon the other questions considered, we adhere to the views already expressed. Garrett's authors had no title originally, and could convey none, and were not in possession long enough to acquire by prescription. On the other hand, Mrs. Christian's author, Ashlin, acquired a tract of about 130 acres, which included the 22 acres here in question, from the government of the United States in 1882 as a homestead, and occupied it as such until his death, probably in 1888, in which year it was sold by order of court in the matter of the tutorship of the minor Pearl R. Fortson, Ashlin's daughter and sole heir, to E. C. Christian, who went into actual possession under his title, and so remained, without interruption, certainly until 1897, and probably through tenants until 1900. It is true that the parcel here in question, being low and wet, was not fenced in, and is not shown to have been used, but that may happen, and does happen, with regard to many farms or plantations; i. e., that portions of them are not fenced or used. Actual possession of part of a tract of land, with title to the whole, and with the intention to possess according to the title, is, however, possession of the whole. Civ. Code, arts.

3437, 3498; Donegan's Heirs v. Martineau, 9 Mart. (O. S.) 43; Henderson v. St. Charles Church, 7 Mart. (N. S.) 122; Gillard et al. v. Glenn et al., 1 Rob. 159; Chamberlain et al. v. Abadie, 48 La. Ann. 589, 19 South. 574; George v. Cole, 109 La. 833, 33 South. 784; Sallier v. Bartley, 113 La. 400, 37 South. 6; Mott v. Hopper, 116 La. 629, 40 South. 921.

The prescription certainly began to run on February 9, 1887, when the land was segregated from the public domain by the patent to McEnery, and Ashlin was in possession at that time, and he, or his heir, remained in possession until the sale to Christian in 1888, when Christian went into possession, and, though the witnesses do not state the exact date, in 1897, when he moved away, one of them (Ivey, who was called in behalf of plaintiff) testifies that he moved to Vivian in 1897, and it is not pretended that there was any adverse possession up to that time, or afterwards, until 1901, when Fain attempted to cultivate the 22 acres here in dispute, but gave it up after a while because he found it too wet. [2] We think, therefore, that actual possession under Ashlin's title for 10 years from February 9, 1887, is shown with reasonable certainty; and, moreover, that the civil possession followed the actual possession until 1901, when it was ousted, as to the parcel here in question by the actual possession of Fain (Civ. Code, arts. 3442, 3443, 3444; Bernstine v. Leeper, 118 La. 1100, 43 South. 889); and hence, as there is no doubt of the good faith of the parties, that the Ashlin title was perfected (in Christian) by the prescription of ten years.

It is therefore ordered that the decree heretofore entered be set aside, and that the judgment appealed from be now affirmed, at the cost of the appellant.