ODOM, Justice.
 

 This is a suit to try title to 100 acres of land in the Parish of LaSalle, the land in dispute being described as follows: “NE14 of NEJ4, N% of SE% of NE%, SEJ4 of SEi/4 of NE14, Ei/2 of NE% of SE14 and NWJ4 of NW% of SE%, all in
 
 *1061
 
 Section 28, T. 11 N., R. 3 E., LaSalle Parish, Louisiana, 100 acres, more or less.”
 

 Plaintiffs claim title to this land by inheritance from their ancestors. It is not disputed that plaintiffs’ ancestors acquired title to the land in 1858 and 1860. Plaintiff alleged that they are now the owners of the land, and that the Louisiana Central Lumber Company, Inc., is claiming to be the owner of it, despite the fact that said company has no just title to the land. They alleged that certain named oil and gas companies had acquired, and now claim to own, mineral leases covering the land, and these companies are made defendants. Plaintiff prayed that they be decreed to be the owners of the land in dispute, free from the claims of the mineral lessees.
 

 Defendants filed answer in which they alleged that title to the land is now vested in the Louisiana Central Lumber Company, Inc. They alleged that on November 22, 1911, S. H. Brown executed a deed conveying the land in dispute, as well as other land, to the Louisiana Central Lumber Company, a corporation; that the deed was recorded in the conveyance records of LaSalle Parish, where the land is situated, on November 22, 1911, in Conveyance Book “B”, pp. 215-216; that the lumber company acquired the property in good faith, for a sound, valuable consideration, by deed translative of property; that it immediately took corporeal possession of the property under the deed in good faith, and that it has had corporeal possession of the property for more than 10 years, and that it has held the land in fact and in right as owner, and that its possession has been continuous, uninterrupted, peaceable, public, and unequivocal. Defendants coupled with their answer a plea of prescription of 10 years acquirendi causa, in bar of plaintiffs’ right to recover, the plea being filed under Article 3478 of the Revised Civil Code, which provides that “He who acquires an immovable in good faith and by just title prescribes for it in ten years.”
 

 The trial judge, after hearing all the evidence adduced by the respective sides, maintained the defendants’ plea of prescription of 10 years acquirendi causa, and held that the defendant Louisiana Central Lumber Company, Inc., was the owner of the land in dispute; that the Louisiana Central Oil & Gas Company, one of the defendants in the suit, was the owner of the minerals and mineral rights in said lands, subj ect to a certain oil, gas, and mineral lease granted by the Louisiana Central Oil & Gas Company to H. L." Hunt. There was judgment accordingly, and plaintiffs’ suit was dismissed at their costs. From this judgment plaintiffs appealed.
 

 One of the contentions made by counsel for plaintiffs is that the deed from S. H. Brown to the Louisiana Central Lumber Company, on which deed defendants rely, is not ■ translative of property and therefore cannot serve as a basis of the prescription of 10 years acquirendi causa. The basis of this contention is that the description contained in the deed does not identify any of the property in dispute.
 

 At the beginning of the trial, the plaintiffs offered in evidence as “rem ipsam and
 
 *1063
 
 as a basis fpr its attack, * * * Deed from S. H. Brown to the Louisiana Central Lumber Company of date November 22, 1911 and filed November 25, 1911 of record in Conveyance Book ‘B’ at pages 215 and 216 of the Conveyance Records of LaSalle Parish, Louisiana, with leave to substitute a certified copy, certified photostatic copy of same”.
 

 This offering was not objected to by counsel for defendants. The deed offered in evidence by the plaintiffs is the one on which defendants rely in support of their claim of ownership. This offering by plaintiff was identified as Plaintiffs’ Exhibit 4. At page 48 of the record, we find the document marked “Plaintiffs’ Exhibit 4”.
 

 Instead of this document’s being the “certified copy” or “certified photostatic copy” of the original deed which counsel asked leave to substitute for the original, it is a copy of a copy, a copy of the deed as recorded in Notarial Book “B”, pp. 215-216, of the records of LaSalle Parish. The instrument as copied in the record of the case bears no certificate showing that it is a true copy of the original deed or that it is a true copy of the deed as copied in the conveyance records. But in the supplemental transcript filed by the clerk of court, he made affidavit that “Plaintiffs’ Exhibit-4 shown at pages 48 and 49 of the Transcript as being deed from S. H. Brown to Louisiana Central Lumber Company, recorded in Conveyance Book ‘B’, pages 215 and 216 of LaSalle Parish records, contains no certificate and the Transcript should be supplemented so as to show the following certificate to said exhibit:
 

 “I hereby certify that the annexed deed from S. H. Brown to Louisiana Central Lumber Company is a true and correct copy of Conveyance Book ‘B’, pages 215 and 216 of the records of LaSalle Parish, Louisiana, but is not a true photostatic copy of the original deed.”
 

 The description of the land as it appears of record in Notarial Book “B”, a copy of which plaintiffs filed in evidence, in so far as it relates to land in Section 28 is as follows: “NE% NE%. Ny2. SEy¡, NE%. SE%. SE14. NE14. Wi/2. SW34. NEj4 wy2. Nwy4
 
 swy4.
 
 E%. NEi/4. sey4. Nwy4, Nwy«. se%, sy2. se%. Sec. 28.”
 

 Referring to this copy of the copy of the deed which plaintiffs filed in the record as their Exhibit 4, their counsel say in their brief that “There are no punctuations by which it can be determined what specific property in Section 28 is referred to”, and for that reason they say the deed is not translative of property and therefore defendants’ plea of prescription must fall.
 

 It clearly appears from the record brought up that the original deed, in so far as the description of the property conveyed is concerned, was incorrectly copied in the notarial records. Evidently the purpose of plaintiffs’ counsel in offering the deed in evidence for the purpose of attacking it was to support their contention that the deed was not one translative of property, for the reason that there were no punctuation marks in connection with the description of the land conveyed by which it could be determined what specific property was referred to. They offered in evi
 
 *1065
 
 ■dence the original deed and asked leave to substitute therefor a certified copy or a certified photostatic copy thereof. Instead of doing this, they produced and filed in evidence a copy of the instrument as recorded in the conveyance records. We •concur in the view expressed by counsel for plaintiffs that, under the description of the land as it appears in the copy of the copy which they filed and had transcribed in the record of this case, it would be impossible to tell just what specific land in Section 28 was intended to be conveyed.
 

 But counsel for defendants offered and filed in evidence a certified photostatic copy of the original deed, a document such as plaintiffs’ counsel had asked at the inception of the trial -to be substituted for the original deed, which original they themselves had offered in evidence.
 

 The description of the land conveyed by Brown to the Louisiana Central Lumber Company, as shown by the photostatic copy of the original deed, is as follows: “NEy4 swy4; wy2 SE% swy4 Sec. 27 NE% NEi/4; Ni/2 SE% NEi/4; SE% SE% NEy4; wy2 swy4 ne%; wy2 Nwy4 swy4; Ey2 ne% sEy4; Nwy4 Nwy, SEy4: sy2 SEy4 Sec. 28 Ey2 and E% SW% Sec. 29 NW14 NEy4; NEy^ NW& Sec. 33, W% NEj4 NWy4; and SE% NWy4-Sec. 34 in Tp. 11 N.R. 3 East La. Mer.”
 

 It will be noted that the punctuation marks found in the description of the land as it appears in the photostatic copy of the original deed are entirely different from those found in plaintiffs’ Exhibit 4, which is a copy of the deed as it appears of record in Notarial Book “B”, pp. 215-216, of the records of LaSalle Parish. According to the punctuation marks found in the original deed, as shown by the photostatic copy thereof, the land intended to be conveyed is easily identified, and it clearly appears that the land in dispute is included in the description.
 

 Counsel for plaintiffs ieferring to the description as shown in their Exhibit 4 and the description as shown in the photostatic copy of the original filed by defendants, say in their brief:
 

 “In other words, the original deed as recorded (Tr. 48) is plainly not translative of the property in dispute, whereas the alleged photostatic copy is.”
 

 The description of the property which governs, of course, is the description shown in the original deed and not that which appears in the notarial records. Counsel for plaintiffs argue that the photostatic copy of the original deed, which counsel for defendant offered and had filed in evidence, should not have been admitted. But counsel for plaintiffs are in no position to urge such objection, for the reason that théy themselves, at the inception of the trial, offered in evidence the original deed and asked permission to substitute therefor a certified copy or a certified photostatic copy thereof. Plaintiffs’ original offering contemplated, of course, the filing in the record of such a copy of the original as defendant offered.
 

 Counsel for plaintiffs say further that the photostatic copy of the original offered by counsel for defendants is not a “certified photostatip copy”. The instrument pur
 
 *1067
 
 porting to be a photostatic copy of the original, as it appears at page 68 of the record, does not show on its face a certificate that it is a true and correct photostatic copy of the original. But, according to the supplemental transcript made by the clerk of the district court, it appears that as a matter of fact s,uch a certificate was attached to the photostatic copy filed. Mr. Q. R. Hudson, clerk of the district court and ex officio recorder of the Parish of LaSalle, certified under oath that the original deed from S. H. Brown to the Louisiana Central Lumber Company was taken by him to Alexandria and there photo-stated and certified that the instrument offered in evidence by the defendants
 

 “ * * * is a true and correct photostatic copy of the original deed from S. H. Brown to Louisiana Central Lumber Company as the same appears on file in my office and as recorded in Book ‘N’ page 73 of the Conveyance Records of LaSalle Parish, Louisiana.” -
 

 (The deed viras first recorded on November 25, 1911, in Notarial Book “B”, pp. 215-216, and on June 15, 1926,-was rein-scribed in Notarial Book “N”, p. 73.)
 

 According to the original record of the cáse as made up by the official stenographer, counsel for defendants offered and asked to be filed in evidence “photostatic copy of deed S. H. Brown to Louisiana Central Lumber Company”. The word “certified” is not used. But in the supplemental transcript the 'stenographer certified that he made an error in transcribing the notes of evidence and that the error was made “in that the word ‘certified’ was omitted from the notes as transcribed in the offering of Defendants’ Exhibit-3”.
 

 Counsel for plaintiffs say that this supplemental transcript, which was made up by the clerk of court and sent to this court after the appeal was lodged here, should not be considered for the reason that it contains new evidence. The supplemental transcript, as sent up, contains no new evidence. What the supplemental transcript purports to be is a correction of certain errors which' the official stenographer certified that he made in making up the original transcript. It adds no new evidence. It merely remedies “the defect or defects” in the original transcript sent up. , See Section 15, Rule I of this court (191 La.).
 

 Counsel’s next contention is that, even if it be held that the deed from Brown to the Louisiana Central Lumber Company is one translative of property, the defendants have never exercised that character of possession of the property which would enable them to plead successfully the prescription of 10 years acquirendi causa. We find no merit in this contention. The land conveyed by the deed (except that in Section 27) forms one contiguous tract and'includes the land in Section 28 which is in dispute. Counsel for plaintiffs in' their argument before this court exhibited a plat of the land made by them, which shows that the land conveyed is not in one contiguous tract. But in a supplemental brief filed by. them they admitted that the plat which" they exhibited is not correct. The reason which they give for this error is that they misinter
 
 *1069
 
 preted the description as contained in the original deed.
 

 The defendants filed in evidence a certified copy of a deed dated October 6, 1923, by which deed the Louisiana Central Lumber Company conveyed to B. S. Landis “all of the merchantable hickory, timber on the following described lands”, the lands described including all the land sold by Brown to the lumber company. The testimony shows that the hickory timber on the land was sold to a man named S. Shamlin, and that the deed was made out to Landis because Landis furnished the money. The consideration expressed in the deed was $6,000.
 

 According to the testimony of Shamlin— and his testimony on this point is not disputed — , he built a small sawmill on the Southeast Quarter of the Southwest Quarter of Section 28, which is included in the contiguous tract sold by Brown to the lumber company, for the purpose of manufacturing the hickory timber on the tract of land. This mill was built and operations started in the latter part of the year 1923, and it was kept in operation for about one year. It is shown that a crude boarding house for the workmen at the mijl and for some of the timber cutters and haulers was maintained near this mill during the entire time that it was in operation. Several witnesses testified that they had cut and hauled hickory timber from the 100-acre tract, which timber was converted into manufactured products at the sawmill. It was conclusively shown that Shamlin and his crew cut and removed the hickory timber from all portions of the tract covered by the deed from Brown to the Louisiana Central Lumber Company, including the 100 acres now claimed by plaintiffs. Several witnesses testified that they distinctly remembered cutting and removing timber from the 100-acre tract. The building and the maintaining of this sawmill and of the boarding house and the cutting and removing of the timber from the land were acts of possession which were open and unequivocal; they were not clandestine, but were public, peaceable, and uninterrupted during the entire time. The testimony shows that the greater portion of this work was performed by people living in close proximity to the land involved. The testimony further shows that some of the plaintiffs in this suit were then living in that vicinity.
 

 Plaintiffs do not dispute these acts of possession, but, on cross-examination of the witnesses who had cut and hauled the timber from the land, counsel for plaintiffs brought out the fact that the witnesses could not say positively how much timber they had cut and removed from the 100-acre tract involved, and they could not recall whether they had taken timber from each and every portion of that tract. For this reason,- counsel say that defendants did not have that character of possession necessary to support their plea of prescription. In aid of their argument they cite certain cases decided by this court, where it was held that, when timber cutting is relied on as an act of possession, it is necessary to show that timber was removed from all parts of the land involved. Those cases are not applicable here for the
 
 *1071
 
 reason that defendants in this case do not have to depend solely upon timber cutting to support their plea. Here the land involved is a part of a larger, contiguous tract, on a part ,of which there were built and maintained for a period of one year a sawmill and a boarding house. This case is.governed by Article 3437 of the Revised Civil Code, which reads as follows:
 

 “It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that it [is] included within the boundaries.”
 

 It has been repeatedly held by this court that actual corporeal possession of a part of a tract, with title to the whole and intention to possess the whole, constitutes full possession as contemplated by the Code. Tremont Lumber Co. v. Powers & Critchett Lumber Co., 173 La. 937, 139 So. 12 (citing Revised Civil Code, Articles 3437, 3498); Sallier v. Bartley, 113 La. 400, 37 So. 6; Leonard v. Garrett, 128 La. 535, 54 So. 984. See also Mott v. Hopper, 116 La. 629,
 
 40
 
 So. 921, and Ernest Realty Co. v. Hunter Co., 189 La. 379, 179 So. 460.
 

 It was further held in the Tremont Lumber Co. case, supra [173 La. 937, 139 So. 13] that “When actual possession is once acquired, although the act by which it was acquired has ceased, the presumption is, unless a contrary intention clearly appears, that,
 
 the intention
 
 of retaining the possession acquired exists. Civ.Code, arts. 3442, 3443, 3444; Miller v. Albert Hanson Lumber Co., 130 La. 662, 58 So. 502.”
 

 It is not denied that the possession taken of this tract of land by Shamlin was, in law, possession taken by the Louisiana. Central Lumber Company. There was not during these timber operations, nor has. there since been, any adverse possession; of tlie 100 acres here involved, or of any other portion of the main tract.
 

 In 1926, the Louisiana Central Lumber-Company granted a mineral lease covering-this land, and in that year the lessee drilled for minerals on- the Northeast Quarter of' the Northwest Quarter of Section 34, which is a part of the main, contiguous, tract. The defendants offered in evidence-the “log of the well”, showing that it was. drilled to a depth of 1,767 feet.' Counsel for plaintiffs say in their brief that this-furnished no evidence of the drilling of the well on the land. But there is in the record direct proof of the drilling of the well. A witness named W. W. Smith testified' that he lived within 1200 feet of where this, well was drilled, and that he was at home-when the derrick was erected, when the slush pits were prepared, etc., and that he saw drilling operations carried on for about one month. These drilling operations were acts of physical possession of' the land.
 

 For the reasons assigned, the judgment appealed from is affirmed at appellants! costs.
 

 O’NIELL, 1C. J., absent.