463 So.2d 979 (1985)
Steve A. VERZWYVELT, et ux, Plaintiffs-Appellees,
v.
ARMSTRONG-RATTERREE, INC., Defendant-Appellant.
No. 84-86.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1985.
*980 Michael Henry, Natchitoches, for defendant-appellant.
Charles R. Whitehead, Jr., Natchitoches, for plaintiffs-appellees.
Michael I. Murphy, Natchitoches, amicus curiae.
Before DOMENGEAUX, STOKER and KING, JJ.
DOMENGEAUX, Judge.
This is a possessory action instituted by plaintiffs-appellees, Steve A. Verzwyvelt and his wife, Mary Margaret Lemoine Verzwyvelt. The lawsuit was brought as a result of an alleged disturbance in fact perpetrated by defendant appellant, Armstrong-Ratterree, Inc.
Prior to 1972, the Red River negotiated a hairpin curve as it proceeded through Township 9 North, Range 6 West, of Natchitoches Parish. The peninsula  like section of land within this hairpin curve made up part of the Island Plantation owned by Mr. and Mrs. George A. Thomas, (as shown in illustration No. 1 below).
In 1972, the Red River suddenly abandoned its course and surged forth creating a new channel; the hairpin curve of the old channel was transformed into an oxbow lake and the 214.3 acre tract of land which once made up the area within the hairpin curve was separated from the remainder of the Island Plantation by the new channel, (as shown in illustration No. 2 below).
*981 The following diagrams are for illustrative purposes only. They are not scale drawings.
 On December 31, 1979, the plaintiffs purchased from Mr. and Mrs. Thomas the 214.3 acre tract of land described in the deed of acquisition as being "bounded on the North by Red River and on the West, South, and East by a former bed or channel of Red River." The deed went on to state that the sale included "all accretion, alluvion, avulsion, sandbars, batture, second banks, and all rights that the vendor may have in and to the former channel of Red River which adjoins the ... tract." The title further stated "[i]t being understood and agreed that the vendor is transferring to the vendee herein all of the rights that may accrue to the above described property as the result of accretion, alluvion, avulsion, and the like including but not limited to those rights under Articles 509 through 518, of the Louisiana Civil Code."[1]
The property at issue in this case is the oxbow lake created in the former channel of the Red River.
The plaintiffs filed this possessory action claiming that they possessed the oxbow lake created by the former channel of the Red River and prayed that they be maintained *982 in the peaceable possession of that property. The plaintiffs aver that they were disturbed in their possession when the employees of the defendant corporation, Armstrong-Ratterree, Inc. placed a pipe into the oxbow lake and began pumping water out of the lake for irrigation of the defendant's farmlands abutting the lake.
The defendant answered, admitting that it had pumped water out of the former channel of the Red River but denied that the plaintiffs were in possession of the property. The defendant further asserted that it was entitled to extract water from the former channel under the provisions of La.C.C. Art. 657 which allows a property owner adjoining running water to use it as it runs for the purpose of watering his estate.
The district judge ruled that the plaintiffs were in possession of the former channel of the Red River. In a written opinion he cited various acts which he considered as constituting possession, such as:
1. Granting permission to various named individuals to build duck blinds and hunt upon the oxbow lake;
2. Clearing land with bulldozers along the low banks of the oxbow lake; and
3. Building a control structure at the juncture of the oxbow lake and the Red River for the purpose of regulating the level of the water in the lake.
The trial judge ruled that as plaintiffs were in possession of the lake, and as the water in the lake was not running water, the provisions of La.C.C. Art. 657 did not apply. The court therefore concluded that the defendant's pumping operations constituted a disturbance in fact and ordered the defendant to pay damages to plaintiff in the amount of $1,250.00, plus interest, and court costs. The judgment further ordered the defendant to assert its claim of ownership to the disputed property within sixty days from the date the judgment becomes executory.
The defendant-appellant raises two issues on this appeal:
1. Whether the plaintiffs' actions in connection with the former channel of the Red River (the oxbow lake) were sufficient to establish the possession required to bring a possessory action.
2. If it is determined that plaintiffs are in possession of the old channel does the defendant's act of pumping water out of the former channel (the oxbow lake) constitute a disturbance of plaintiff's possession?

ISSUE 1
The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted. La.C. C.P. Art. 3655.
To maintain the possessory action, the possessor must allege and prove that he had possession as owner at the time of the disturbance; that he and his ancestors in title possessed quietly and uninterruptedly for more than one year immediately prior to the disturbance; that there has been a disturbance in law or in fact; and that the action was brought within one year of the disturbance. La.C.C.P. Art. 3658.
The possession necessary to maintain a possessory action must be either corporeal possession or civil possession preceded by corporeal possession by the plaintiff or his ancestors in title. La.C.C.P. Art. 3660; Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La. 1975); Roy O. Martin Lumber Company, Inc. v. Lemoine, 381 So.2d 915 (La.App. 3rd Cir.1980); and Crowel Land and Mineral Corporation v. Neal, 428 So.2d 496 (La.App. 3rd Cir.1983).
The elements and characteristics of the possession necessary to maintain a possessory action vary with the nature of the property and other attending relevant circumstances. What constitutes possession in any case is a question of fact and each case must rest upon its own peculiar circumstances. Plaisance v. Collins, 365 *983 So.2d 608 (La.App. 1st Cir.1978). [Citation omitted].
It is a well established principle of law that physical occupancy of any part of a tract specifically described in a deed with the intent to possess the whole will constitute possession of all the property included therein. Former La.C.C. Art. 3437 and La. C.C.P. Art. 3661; Roy O. Martin Lumber Company, Inc., v. Lemoine, supra, and Crowel Land and Mineral Corporation v. Neal, supra. "Therefore, a possessory action may be brought to quiet possession in an entire estate to which the plaintiff holds title although he can only show actual possession of a part thereof." Riseman, The Possessory Action, 20 Tulane Law Review, 524 (1946). See also Sallier v. Bartley, 113 La. 400, 37 So. 6 (1904); Leonard v. Garrett, 128 La. 535, 54 So. 984 (1911); and Rhodes v. Collier, 215 La. 754, 41 So.2d 669 (1949).
In a possessory action the title to immovable property shall only be introduced to prove:
1. The possession thereof by a party as owner;
2. The extent of the possession thereof by a party; or
3. The length of time in which a party and his ancestors in title have had possession thereof.
La.C.C.P. Art. 3661.
This being a possessory action, any references made by this Court to the plaintiffs' title are restricted to the limited purposes enumerated in La.C.C.P. Art. 3661.
In the instant case the Verzwyvelts introduced into evidence a deed describing the property they purchased from Mr. and Mrs. Georege Allen Thomas. The title includes 214.3 acres of high ground as well as "all accretion, alluvion, avulsion, sandbars, batture, second banks, and all rights that the vendor may have in and to the former channel of Red River which adjoins the ... tract." Also included in the title was "all of the rights that may accrue to the above described property as the result of accretion, alluvion, avulsion, and the like, including but not limited to those rights under Articles 509 through 518, of the Louisiana Civil Code." Mr. Verzwyvelt testified that when he purchased the property he understood and believed that he was purchasing the former channel of the Red River and further that he possessed the abandoned channel.
La.C.C.P. Art. 3661 allows a title to be introduced to prove the extent of the plaintiffs' possession. The Verzwyvelt's title can therefore be used to determine the bounds of the property they intended to possess. The title makes reference to the term avulsion and also to La.C.C. Art. 518 (see footnote 1, supra, for text of Article 518). Inasmuch as the term avulsion and Article 518 are adverted to in the title we must examine their meaning in context with the title as a whole to ascertain the extent of the Verzwyvelt's title.
The term avulsion is defined by the Louisiana Jurisprudence as "a sudden and perceptible change in the course and channel of the river." Dickson v. Sandefur, 235 So.2d 579 (La.App. 2nd Cir.1970), modified on appeal, 259 La. 473, 250 So.2d 708 (1971).
La.C.C. Art. 518 states in pertinent part:
"If a river or stream, whether navigable or not, opens itself a new bed by leaving its former channel, the owners of the soil newly occupied shall take, by way of indemnification, the former bed of the river, every one in proportion to the quantity of land he has lost."
The Red River abandoned its course in 1972, and formed a new bed through the Thomas' property. The action of the Red River in abandoning its course and opening a new bed constitutes avulsion. La.C.C. Art. 518 gives a landowner whose property was taken by the new channel the former channel.
For the purposes of determining the extent of the Verzwyvelts' possession we interpret their title as including the former channel of the Red River.
*984 There is evidence in the record that the Verzwyvelts corporeally possessed the 214.3 acres of high ground by raising agricultural crops and grazing cattle upon it. The record also indicates that Mr. Verzwyvelt constructed a water control structure where the oxbow lake created in the former channel meets the Red River. Evidence was further adduced that Mr. Verzwyvelt conducted land clearing operations along the banks of the former channel and granted permission to certain named individuals to build duck blinds and hunt upon the lake.
The Verzwyvelts have entered a title into evidence and have testified that they believe they possess within the bounds of their title. The evidence is sufficient to prove that the plaintiffs exercised physical possession of a considerable part of the land described in their deed. The acts of physical possession recited above combined with the deed describing the property in dispute establishes that the Verzwyvelts had sufficient corporeal possession of other parts of the tract to constitute constructive possession of the whole as provided in former La.C.C. Arts. 3437 and 3431.
At oral argument, the appellant cited the Louisiana Supreme Court case of Chaney v. State Mineral Board, 444 So.2d 105 (La.1983), and contends that Chaney should be controlling here. It argues that the acts of possession exhibited by the plaintiffs in the Chaney case "were much more open, notorious, and adverse than the acts testified to by Mr. Verzwyvelt", and therefore the district judge was in error for holding that the acts of Mr. Verzwyvelt were sufficient to prove possession.
We distinguish Chaney from the case at hand. In Chaney, titles of the riparian landowner plaintiffs were not introduced into evidence. Here, Mr. Verzwyvelt did enter a title into evidence. The Chaney case supports our holding. Therein, the Court cited City of New Orleans v. New Orleans Canal, Inc., et al, 412 So.2d 975 (La.1982) for the proposition that:

"When a possessor has a title, his exercise of possession over a part of the property constitutes the exercise of constructive possession of the whole; however, when a possessor does not have a title, his claim of possession is limited in extent to that property shown by enclosures (artificial or natural boundaries) and his possession must be proved `inch by inch' so that the possessor must establish actual, physical and corporeal possession over the entire amount of land claimed in the possessory action. Stated otherwise, the possessor without title is entitled to be maintained in possession only to the extent of the boundaries within which he proved actual, physical and corporeal possession."
For the purposes of this possessory action and as was shown, supra, Mr. Verzwyvelt has introduced a title into evidence and proven corporeal possession over a part of the property within the bounds of that title. He therefore is deemed to be in possession of the entire tract described in his deed.

ISSUE 2
The defendant-appellant argues that the trial judge was in error for holding that the act of pumping water out of the former channel for irrigation purposes was a disturbance in fact. It contends that it had a natural servitude over the water in the one time channel of the Red River under the provisions of La.C.C. Art. 657.
La.C.C. Art. 657 provides that:
"[t]he owner of an estate bordering on running water may use it as it runs for the purpose of watering his estate or for other purposes."
We do not agree with the appellant's assertion that it has a natural servitude over the water in the abandoned channel. We premise our position on the trial court's factual determination that the water in the abandoned channel is not "running water" as contemplated by La.C.C. Art. 657.
Whether water is "running water" for the purpose of La.C.C. Art. 657 is a factual issue to be determined by the trial court. Before an appellate court can disturb the factual determination of the trial court, it must be determined that the finding *985 of fact is manifestly erroneous and has no reasonable basis. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In his written opinion the district judge stated:
"The court finds that Article 657 is inapplicable in this case because this is not running water. The defendant itself admits in its exhibit A-9 that, and properly so, that this is a lake. The fact that a drainage canal drains into it does not alter the fact that this body of water is a garden variety ox-bow lake of the type common to the rivers, streams and bayous of this state."
There is evidence in the record to support the district judge's factual findings. The former channel of the Red River which is at issue in this appeal meets the Red River at two junctures. The upstream juncture of the Red River and the former channel has been completely sealed off by the natural buildup of soil. The downstream juncture has been partially sealed off by natural causes, and is the site of the earthen control structure constructed by Mr. Verzwyvelt.
The one time channel depends upon excessive rainfall and upon overflow from the Red River for its supply of water. When the Red River overflows its banks, wate from the river innundates the former channel. When the Red River's water level drops, the water in the former channel will drop until it reaches the natural structure formed at the downstream juncture (and now, until it reaches the level of the plaintiff's control structure.) The flow of water in the channel depends almost totally upon the level of the Red River. During much of the year the water in the onetime channel is stagnant.
Also convincing to us that all parties involved considered this body to be an oxbow lake is a letter sent by the President of the defendant corporation to Mr. Verzwyvelt which repeatedly refers to the former channel as a "lake".
As there is no continuous current in the former channel we fail to see how it can be construed as running water. We therefore conclude that the defendant-appellant does not have a natural servitude upon the water in the lake.
Inasmuch as the defendant admitted that he pumped water out of the lake we conclude that such actions constituted a disturbance in fact. A disturbance in fact is defined in La.C.C.P. Art. 3659 as "... an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment."
Certainly the act of pumping water from a lake possessed by Mr. and Mrs. Verzwyvelt is an example of a physical act which prevents the Verzwyvelts from enjoying their possession quietly.
The appellant argues in the alternative that should we find that the Verzwyvelts were in possession of the former channel, and that Armstrong-Ratterree did not have a natural servitude over the water in the channel that an award for damages was not justified.
The district judge awarded the plaintiffs $1,250.00 for their "inconvenience, worry, and concern."
The appellant contends that "[t]here is very little evidence in the record to support..." the trial court's damage award.
"[O]ne in legal possession of land is entitled to bring a suit for damages against one who disturbs his possession." Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App. 2nd Cir.1980).
In the assessment of an award for damages "much discretion must be left to the [trial] judge or jury ..." La.C.C. Art. 1934(3), Reck v. Stevens, 373 So.2d 498 (La.1979).
"[B]efore a Court of Appeal can disturb an award made by a trial court ... the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award ..." *986 Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) [Citations omitted].
We conclude that there exists sufficient evidence in the record to support the district judge's award of damages. In light of such evidence we cannot hold that the trial court abused its much discretion in making the award.
For the above and foregoing reasons the judgment of the district court is affirmed.
AFFIRMED.
NOTES
[1] The sale of the property at issue in this case took place in 1972. The Civil Code Articles dealing with property were amended effective January 1, 1979. Article 518 of the Louisiana Civil Code dealing with avulsion read this way in 1972:

"If a river or stream, whether navigable or not, opens itself a new bed by leaving its former channel, the owners of the soil newly occupied shall take, by way of indemnification, the former bed of the river, every one in proportion to the quantity of land he has lost.
They shall again take their former property, if the river or stream returns to its former channel."
The 1979 amendment (now C.C. Art. 504) reproduced the substance of former C.C. Art. 518. See official comments to C.C. Art. 504.