## E. W. CLIMER, Administratrix, *v.* L. SELBY.

The general rule that nothing passes a perfect title to public lands but a *patent* is not without exceptions.

Where an equitable right which originated before the date of the patent, whether by the first entry or otherwise, is asserted, it may be examined.

A clerical error by the register of the land office in the location of a claim to pre-emption, under the Act of 25th February, 1847, will not defeat the pre-emption claim, otherwise good, in favor of a *patent* issued to a third party; *a fortiori* if that party knew of the pre-emption claim at the time of effecting his entry.

The rule, 18 Peters 436, that "when the title to the public land has passed out of the United States by *conflicting patents*, there can be no objection to the practice adopted by the courts of a State to give effect to the better right," applied and affirmed as applicable to patents eminating from the State.

APPEAL from the District Court of the parish of Carroll, *Perkins*, J. *Caldwell*, for plaintiff. *Sparrow*, for defendant and appellant.

VOORHIES, J. The plaintiff, suing as the administratrix of the succession of *William J. Climer*, deceased, sets up title to the N. E. ¼ section 9, in town

ship No. 19, R. 11 E., in the district of lands north of Red River, by virtue of a right of settlement, a warrant of location and actual location, and a patent under the State. The defendant claims to be the owner of the same tract of land by virtue of a patent also from the State, anterior in date to that of the plaintiff.

The administratix of *Climer's* estate alleges that the defendant's title is null and void, on the ground that the same was issued to him illegally and was obtained by him through fraudulent misrepresentations.

The record shows that on the 6th May, 1847, *W. J. Climer* filed in the Land Office at Baton Rouge, his declaration of intention to claim the above described tract of land, as a preference right, under the provisions of the 2d section of the Act of the 25th February, 1847; that after adducing proof, and taking the oath required by law, and paying the purchase money, a warrant of location was granted to him, but by an error of the officer of the land office, the location was made on the S. E. ¼ section, then belonging to the United States Government, instead of being made on the N. E. ¼ section on which *Climer* was actually settled, and which he claimed under his preference right. Subsequently, on the 27th of May, 1850, the defendant, *Louis Selby*, filed in the Land Office his application to purchase the land in controversy at the rate of $1 25 per acre, with *the understanding* that should *any right of pre-emption* be sustained thereto, or to any part thereof, under the Act of the 25th February, 1847, *the purchase money* should *be refunded to him without interest*. On the 28th November, 1850, a patent was issued to *Louis Selby* in accordance with his previous application; and on the 8th April, 1852, after the death of *William J. Climer*, a patent for the same tract of land was also issued to " *William J. Climer*, his heirs and assigns."

It now becomes necessary to examine what rights the plaintiffs acquired from the State to the land in controversy, and how they stand affected, if at all, by the defendant's patent.

It is unquestionably true, as a general rule, that nothing passes a perfect title to public lands but a patent, but this rule is not without exceptions. In the case of *Kitteridge* v. *Breaud*, 4 R. R. 83, this court considered the principle to be well recognized in our jurisprudence, and that of the courts of the United States, that where an equitable right, which originated before the date of the patent, whether by the first entry or otherwise, is asserted, it may be examined. In that case, *Kitteridge* claimed the land in controversy by virtue of a right of pre-emption, evidenced by the register's certificate of purchase, and the defendant by virtue of a patent. The court observed that the defendant knew the existence of the plaintiff's claim and must have concealed it from the knowledge of the Commissioner of the General Land Office and the President, otherwise a patent would not have been issued. The plaintiff's claim prevailed. (See authorities quoted, and also 13 Peters, 436.) In *Godeau* v. *Phillips*, 3 L. R. 62, Judge *Porter*, as the organ of the court, said: The Acts of Congress which conferred on the settlers on public lands a pre-emption right, vested a legal title in the buyer as soon as the purchase was made, and the money paid according to the conditions prescribed in those Acts. And the title thus acquired could not be legally divested. The Government of the United States could not, even had they desired to do so, have taken the land from the settler, who, under the faith of Acts of Congress, entered the portion of the public land which he was permitted to acquire, and paid for it. But in the

present case no such intention existed on their part. It is proved beyond doubt that the sale to the defendant originated in the error of the register." We think it may be safely assumed in the present case, that no intention ever existed on the part of the State Government to defeat *Climer's* right of pre-emption or to question its validity in any respect; on the contrary, from the evidence the inference would seem to be clearly otherwise. *Robert J. Ker*, who was then Register of the Land Office, testifies in relation to the endorsement of location on *Climer's* warrant as follows: "I think it was made by Mr. *Green*, my clerk. The practice was to endorse the location from the certificate given to the party. In this way the error which has been committed in the certificate was transferred to the endorsement. Had the clerk or myself had reference to the preference proof, the error could have been detected and corrected, for the south-east quarter has not been selected for the preference right of *W. J. Climer;* in fact it was not at the time selected by the State, but was United States land. It was subsequently located under a State land warrant in the Land Office of the United States by Mr. *Samuel Canady.* Its location in the certificate was a clerical error and a nullity, *for the State had not located it.* Mr. *William J. Climer* had certainly no knowledge of its location, and was unconscious of the error as I was myself. Mr. *Climer* would have known nothing of the mistake committed. The law rendered it imperative that the location should embrace his improvement, and conform to his proof; it was very natural for him to presume that the Register knew the land and did his duty, &c." The fact, too, of *Climer's* occupancy of the land, improving and cultivating it until the period of his death in October, 1848, and its remaining afterwards in possession of his widow, scarcely admits, it would seem, of any doubt. Besides, the fact of the issuing of the second patent is significant; it leads to the inference that the State Government must have considered *Climer's* pre-emption claim as still subsistent and legal, leaving it to be asserted according to the principle recognized in the case of *Bagwell* v. *Broderick,* 13 Peters, 436, that "when the title to the public land has passed out of the United States, by *conflicting patents,* there can be no objection to the practice adopted by the courts of a State, *to give effect to the better right* in any form of remedy the legislature or courts of the State may prescribe."

We are satisfied from all the circumstances of the case, as consonant with the usual course of human conduct, that the defendant must have been aware of the existence of *Climer's* pre-emption claim and the actual occupancy of the land at the time he became the purchaser of it; for, in his application for its purchase, we find that he has carefully reserved his right to the reimbursement of the price, in case that any *right of pre-emption* thereto or to any part thereof, should be sustained under the Act of 25th February, 1847. It is clear therefore, under the principles recognized in the cases to which we have adverted, that the plaintiff's title must prevail over the defendant's patent issued in error. It is proper to add that in coming to this conclusion we have disregarded such portions of the evidence as we have considered of doubtful admissibility.

It is, therefore, ordered and decreed that the judgment of the District Court be affirmed with costs.