LAND, J.
This is an injunction suit to restrain and prohibit the Register of the State Land Office, the State Auditor, and the State Treasurer from executing the provisions of Acts Nos. 85 and 86, pp. 141, 142, of 1906, confirming as applicants for the entry of many thousands of acres of public land the present holders and owners of patents and certificates of entry issued for scrip not legally receivable in payment of the price of public lands, on the ground that said acts are unconstitutional, because they impair the vested contract right acquired by the plaintiffs in 1905 to enter the same lands under Act No. 125, p. 209, of 1902. The suit was dismissed on an exception of no cause of action, and the plaintiffs have appealed.
The facts alleged in the petition, omitting all mere inferences and conclusions of law, are in substance as follows:
The lands described in the petition were acquired by the state of Louisiana under the swamp land grants of 1849 and 1850.
In the year 1880 the Legislature passed Act No. 23, p. 25, authorizing the Governor to institute proceedings and to employ counsel to recover for the state lands donated by the several acts of Congress for divers purposes, and the value of such lands in money or government scrip which might have been illegally disposed of by the United States. The act provided:
“That the state shall incur no cost or expense in the prosecution of said claims other than an allowance to be made by the Governor out of the lands, money or scrip that may be recovered.”
In March, 1880, the Governor of the state entered into a contract with John McEnery, an attorney at law, to recover the lands, money, and scrip referred to in Act No. 23, p. 25, of 1880, and agreed to pay him for his services “fifty per centum of the land, money, or scrip recovered, to be paid as provided in said Act 23.” It was further stipulated that:
“Where lands in kind are recovered, the compensation, as aforesaid, of the said John Mc-Enery shall be represented in scrip or certificates, to be issued by the Register of Land Office of the state locatable upon any lands owned by the state.”
The Legislature, by Act No. 106, p. 171, of 1888, repealed Act No. 23, p. 25, of 1880, and abrogated the said contract between the Governor and John McEnery, to take effect on January 1, 1889.
John McEnery, prior to January 1, 1889, had recovered for the state many thousand acres of land, for which scrip or certificates locatable upon any lands owned by the state were issued to him. These certificates were sold and assigned by John McEnery, and some of his assignees located their certificates on the lands described in the petition, “which have not been recovered by said John Mc-Enery under the contract entered into by and between him and the then Governor of the state, for which patents were thereafter * * * issued.” The other assignees (to quote the language of the petition) “stood upon their certificates.” It was argued at the bar that some of the lands described in the petition were not covered by patents, but by certificates of entry. We have already quoted the allegation that patents issued for such lands. This fact appears also from the following allegations of the petition, to wit:
*715 “Petitioners ayer that in every case the lands herein described were entered with illegal Mc-Enery scrip or certificates, heretofore set out, and the patents that were issued therefor refer upon their face to Act No. 23, p. 25, of 1880, or to the cex-tificate number, which certificate showed upon its face it was issued under Act No. 23, p. 25, of 1880.”
The word “certificate” is used throughout the petition as synonymous with “scrip,” and we cannot understand how a mere warrant locatable on any public land can be considered as the equivalent of a certificate of entry or receiver’s receipt showing that the applicant has paid for a particular tract of land and is entitled to a patent therefor. Hence this case must be considered and determined on the assumption that patents issued to the assignees of John McEnery for all the lands described in the petition.
In March, 1905, plaintiff made application for the entry of all the lands described in their petition under the provisions of Act No. 125, p. 209, of 1902, and made a legal tender of the statutory price to the proper officials. This application was refused by the Register for the reason that said lands had been previously entered and patented. Plaintiffs took no legal proceedings against the Register to compel him to accept the price and to issue the proper certificate of entry.
In the year 1906 the Legislature passed Acts Nos. 85 and 86, pp. 141, 142, the former referring to patents and the latter to certificates of entry, paid for in certificates or warrants for scrip, “which were not legally receivable in payment” for the price of public lands. In both cases the Legislature provided for the confirmation of such patents and certificates of entry to the present holders and owners thereof, on payment in cash of the price of $1.50 per acre within one year from the date of the passage of said acts.
The present suit was filed on July 12, 1906, a few days after the passage of Acts Nos. 85 and 86, pp. 141, 142, of 1906. The sole defendants are the Register of the State Land Office, the State Auditor, and the State Treasurer. The relief prayed for is a decree perpetually enjoining the defendants from executing the provisions of Acts Nos. 85 and 86, pp. 141, 142, of 1906, and declaring the said acts to be unconstitutional, null, and void.
The first question to be considered and determined is whether the plaintiffs, by their application and tender to the Register in 1905, acquired any contract or vested right in the lands in question. They could have done so only on the theory that the patents previously issued to the assignees of John McEnery were absolutely null and void, and could be treated as nonexistent by the Register of the State Land Office. This is the theory on which this suit was instituted. The patents are alleged to be null and void, not because they were not in due form, but for the reason that they refer to Act No. 23, p. 25, of 1880, or to certificates which showed illegality on their face. Boiled down, the alleged absolute nullity is that the Register received in payment of the price of the lands in question McEnery scrip “locatable on any public land,” which scrip was issued contrary to the proviso of Act No. 23, p. 25, of 1880. Conceding that such scrip was illegal, nevertheless the state received some consideration for the patents, because the scrip so locatable operated as a relinquishment by John McEnery of his interest in the same number of acres of land recovered by him under his contract. The state for more than a quarter of a century acquiesced in the issuing of patents based on McEnery scrip, and took no adverse action until 1906, long after the lands represented by the patents had passed into the hands of third persons.
In State ex rel. John McEnery v. Governor, 42 La. Ann. 209, 7 South. 738, it was held to be the duty of the Register to issue patents to the relator for his interest in all lands, warrants, or scrip recovered by him. While the question of the legality of the stipulation *717 In the contract as to the issuing of scrip “locatable on any public land” was not involved or discussed in that case, the duty of the Register to issue scrip under Act No. 23, p. 25, of 1880, when lands were recovered in kind, was announced. 42 La. Ann. 222, 7 South. 738. Hence the fact that the patents in question refer to Act No. 23, p. 25, of 1880, or to certificates issuable under the same, do not affect their validity. The alleged nullity is dehors the patents, and affects only the consideration received by the state when she parted with the title. If such scrip had been located on lands recovered by John McEnery, the transaction would have been perfectly legal. Its improper location on public lands not so recovered was a matter discoverable only by inquiry and investigation.
A patent under the great seal of the state vests the legal title in the patentee, segregates the land from the public domain, and deprives the land department of jurisdiction. I-Ience a subsequent application to enter the same land confers no inceptive rights on the applicant. A patent cannot be revoked or set aside except upon judicial proceedings instituted on behalf of the sovereign. See In re Emblen, 161 U. S. 52, 16 Sup. Ct. 487, 40 L. Ed. 613; Emblen v. Lincoln Land Co., 184 U. S. 660, 22 Sup. Ct. 523, 46 L. Ed. 736; Smith v. Crandall, 118 La. 1052, 43 South. 699; U. S. v. Throckmorton, 98 U. S. 70, 25 L. Ed. 93.
This doctrine is applicable even to a case of a patent issued under an unconstitutional act of Congress. In re Emblen, 161 U. S. 56, 16 Sup. Ct. 487, 40 L. Ed. 613. In Stone v. United States, 2 Wall. 535, 17 L. Ed. 765, the court said:
“A patent is the highest evidence of title, and is conclusive against the government and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. * * * Patents are sometimes issued unadvisedly or by mistake, when the officer has no authority in law to grant them, or where another party has a higher equity and should have received the patent. In such cases courts of law will pronounce them void. The patent is but evidence of a grant, and the officer who issues it acts ministerially, and not judicially. If he issues a patent for land reserved from sale by law, such patent is void for want of authority. But one officer of the land office is not competent to cancel or annul the acts of his predecessor. That is a judicial act, and requires the judgment of a court.”
See, also, Maxwell Land Grant Case, 121 U. S. 380, 7 Sup. Ct. 1015, 30 L. Ed. 949.
It follows that the plaintiffs, by their applications and tender to the Register, acquired no inceptive rights in the lands already patented, and hence had no contract or vested rights to be impaired by the legislation of 1906. Plaintiffs rely on Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363. That case has no application, as the right of Pennoyer to make his entry was conceded, and the only question was whether such entry had been so far perfected as to confer a vested right which could not be impaired by subsequent state legislation.
As plaintiffs made no application to enter any other lands than those previously patented, the question of lands merely covered by certificates of entry is not before the court. As to McEnery scrip “locatable on any public land,” Acts Nos. 85 and 86, pp. 141, 142, of 1906, did not validate the same, but, on the contrary, repudiated all payments for patents or certificates of entry made with illegal scrip.
For the reasons assigned, the judgment below is affirmed; costs of appeal to be paid by the plaintiffs and appellants.