PROYOSTY, J.
Plaintiff is a corporation whose main object is hunting and fishing. It maintains a game preserve, and this suit is brought to enjoin the defendant, a professional hunter and trapper, from exercising his vocation thereon.
For many miles above the head of the *360 passes which constitute the mouth of the Mississippi river the banks of the river consisted formerly of narrow strips of land extending but a few acres back, beyond which were the waters of the Gulf. Half a century or so ago a man by the name of Cubitt cut a ditch across the strip on the east side of the river a few miles, above the head of Passe-a-1’Outre, and the waters of the river, rushing through this ditch at flood times, have in the course of time enlarged it so that it is to-day more than half a mile wide, and forms a permanent outlet of the river, known as Cubitt’s Gap. The sediment from the muddy river water flowing through this,gap has built up a wide territory. The formation rises but little above Gulf level, and when storms or high winds back up the Gulf, this area is all water-covered, not, however, by salt water, but by the water from Gubitt’s Gap, which, encountering at such times the Gulf water, is checked and backed up. One main stream from Cubitt’s Gap, called Main Pass, flows across this formation in a northeasterly direction. Pour others branch off, one of which, called Raphael’s Pass, flows southeasterly. These four branches subdivide, and their subdivisions and the subdivisions of these subdivisions subdivide ad infinitum in every direction, and channels branch off from Main Pass itself. ' These streams, in building up the land, have done so in the usual manner with silt-bearing streams; they have dropped their load of sediment upon their banks and vicinity to a much greater extent than further away, leaving the intermediate spaces more or less in their original water-covered condition, converting them into ponds of varying depths. Although this area rises but little above Gulf level, the ordinary tides do not cover it. Vegetation is luxuriant upon it; and, as salt water kills all vegetation wherever it can reach, the seashore line is distinctly marked by the line of vegetation.
Plaintiff has secured control and possession, by lease or purchase, of some thirty-six square miles of this territory; and maintains as a game preserve that part of this area between Main Pass on the north and Raphael’s Pass on the south.
[1] Although plaintiff’s title to the area embraced in this preserve is by pátents from the state, and these patents are not only fully alleged, but actually annexed to the petition by certified copies, defendant starts out in his answer by denying that plaintiff has title, and does not thereafter in his answer expressly admit that plaintiff has title to any part of this area, although his real defense is not to that effect, but, as shown by subsequent allegations of the answer and by the argument, is that a part of the area embraced within the boundaries assigned to the preserve in the petition is not covered by the patents, and that the title of plaintiff is void for sundry alleged reasons. We mention this feature of the answer simply for the purpose of noting that it is not a compliance with the Practice Act of 1912 (Act No. 157 of 1912).
[2] The several reasons assigned for the invalidity of plaintiff’s title may be disposed of together. They are, first, that this preserve is worth more than $300,000, and that Act 112, p. 103, of 1882, under which the plaintiff is organized, does not allow the corporations formed under it to hold property in excess of that amount; second, that this land is being held by plaintiff in violation of article 265 of the Constitution; and, third, that in the selling of the lands to plaintiff and its lessors by the state the requirements of Act 215 of 1908 were not observed. Manifestly the questions of whether the plaintiff is acting in violation of its charter, and whether the lands of the state háve or not been validly sold or are being validly held are questions which the state alone, acting through her Attorney General, has a standing for liti *362 gating. State ex rel. Lannes v. Attorney General, 30 La. Ann. 954; In the matter of La. Savings Bank, 35 La. Ann. 196; Worden v. Fisher, 52 La. Ann. 580, 27 South. 83.
Defendant does not deny having trespassed in the past, and does not disavow the intention to continue to trespass, but contends that plaintiff is seeking to include the seashore within its injunction, and to include also a certain area which has formed, since the patents were issued, between the seashore and the land covered l y the patents as the result of sediment deposits, and that plaintiff is seeking to include also such navigable waters as may be within the limits of said preserve.
[3] Plaintiff’s original petition was open to the imputation of intending to include within the injunction the navigable waters, if any, for it did not except them; but the supplemental petition does expressly except them. Both petitions give the seashore line as the eastern boiindary line, thereby including within the injunction the land, if any such there be, lying between the seashore and the lands covered by the patents; but the supplemental petition proceeds to give a precise description, according to the maps of the government surveys, of the lands intended to be included within the injunction, and annexes copies of the patents; so that the vagueness of the description by the shore line, if vagueness there be, is entirely cured. By making our decree conform with the supplemental petition—nay, restricting it to the north bank of Raphael’s Pass, which -Mr. John Dymond, Jr., president of the. club, testifies is the southern boundary of the preserve (though not of plaintiff’s holdings), as we shall do—we shall remove both of' these grounds of defense. And, for greater precision, we shall not content ourselves in doing so with using the word “navigable,” in describing* the waters over which the injunction does not extend (the popular meaning of that word being vague and susceptible of being interpreted by defendant as embracing whatever waters are capable of floating a hunter’s canoe), but shall use the definition given to that word by this court in Goodwill v. Police Jury, 38 La. Ann. 752, to wit: Such waters as in their natural state “afford a channel for useful commerce.”
[4] The next, and last, ground of defense —the one most insisted on in the argument— is that the boundaries of this preserve are not so marked that the hunter and trapper, as he travels through that wild, weed-grown, swampy country, may know them, and that:
“It is essential, in order to enjoin a person from doing a thing, to clearly state what that thing consists of.”
That in order to enjoin a person from going upon a tract of land the boundaries of that tract of land must be given with precision. Avery v. L. Onillon and Others, 10 La. Ann. 127.
[5] The legal proposition here advanced, as to the certainty requisite for an injunction, needs no reinforcement by citation of authority ; but we think it is fully satisfied by the evidence in this case. This evidence shows that this preserve is bounded on the northwest by Main Pass, and on the southwest by Raphael’s Pass, and that both of these passes have well-defined banks, and that along these banks conspicuous signs are posted; that it is bounded directly west by the back line of the lands fronting on the river, and that this line is marked by a fence and posted signs; that along the eastern boundary the line is marked by posted signs; that all these signs are half a mile apart, and are composed of creosoted posts 6x6, with a cross-board 12 inches wide and 2 feet long with appropriate warning upon it. This line of signs along the eastern boundary, or seashore, was put up by an engineer in 1910; and the chief warden of plaintiff testifies that whenever-any of them has disappeared—either blown *364 or washed away, or torn down by trespassers —he has replaced it. Defendant testifies that, while he was chief warden of plaintiff, Mr. Dymond, president of the club, instructed him that, as the land formation gradually extended further out.into the gulf, as the result of the deposits of sediment, he should move the line of signs further out so as to follow the seashore. Mr. Dymond denies having given any such instruction.
It is therefore ordered, adjudged, and decreed, that the judgment appealed from be set aside, and that there now be judgment reinstating and perpetuating the writ of injunction herein originally issued, and forever enjoining and restraining the defendant, George Barrios, from trespassing upon the property of plaintiff, or from taking, or attempting to take, without the permission of plaintiff, game, wild fowl, or fur-bearing animals therefrom, said property being described as follows:
All of that area, bounded on the northwest by Main Pass of Cubitt’s Gap, on the southwest by Raphael’s Pass, on the west by the 40-acre line of the lands fronting on the Mississippi river, as marked by a fence along said line, and on the east by the dividing line between the lands described in the patents annexed to plaintiff’s petition herein and the lands to the east, if any, or the seashore, as said eastern line is at this time marked by the line of signposts set up by plaintiff, excluding, however, from the operation of the injunction whatever part of the seashore or of the shore of the arms of the sea, as may be included within said area, and also all such waters as in their natural condition afford a channel for useful commerce.
It is further ordered, adjudged, and decreed that the defendant pay the costs of this suit.
O’NIELL, J., takes no part.