(87 South. 32)

No. 23927.

ALBRITTON v. SHAW.

(Nov. 12, 1920. Rehearing Denied Jan. 14, 1921.)

*(Syllabus by Editorial Staff.)*

**1. Public lands ⚶152—Prerequisites of right to attack validity of patent stated.**

The two prerequisites of the right of an individual to attack the validity of a land patent are: First, that the individual making the attack had an equitable title or an inceptive right on the land, antedating the issuance of the patent; and, second, that the attack is aimed at the jurisdiction or legal authority of the officers of the land department to issue the patent.

**2. Public lands ⚶31—Trespasser or possessor without evidence of title cannot attack patent.**

A mere trespasser, or possessor who has no other evidence of title than an occupancy of the land, is without authority to question the validity of patent for the land in due form and signed by the proper officers.

**3. Public lands ⚶152—One who had equitable title when patent issued to another may attack validity of patent.**

A person who had no equitable right previous to the issuance of a patent to some one else does not acquire the right to attack the validity of the patent by offering to purchase from the land department the land already conveyed by the patent; but one who had an equitable right at the time the patent was issued may attack the patent's validity, on the ground that the officers of the land department had no legal authority to issue it, in view of Act No. 62 of 1912.

**4. Public lands ⚶152—Patent in contravention of prohibitory law null.**

A state patent issued in contravention of a prohibitory law is absolutely null, under Rev. Civ. Code, art. 12.

**5. Public lands ⚶152—Statute precluding entry of occupied land held applicable to land subject to entry.**

Act No. 21 of 1886, prohibiting the purchase or entry of state land occupied, possessed, or cultivated by another, was applicable to land subject to entry, as well as land that was, for want of approval or survey, not yet open to entry.

**6. Public lands ⚶152—Applicability of statute prohibiting purchase of occupied land held not limited to actual settlers.**

Act No. 21 of 1886, prohibiting purchase or entry of state land, possessed or improved or cultivated by a person holding or claiming adversely to the party seeking to purchase or enter it, did not require that the person so in possession be an actual settler or resident upon the land.

**7. Public lands ⚶152—Claimant under United States certificate had sufficient title to attack patent from state.**

One in possession of land claimed under certificate of entry from the United States, after possession thereunder for many years, had a sufficient equitable title to attack validity of patent from state, granting such land to other person.

**8. Public lands ⚶102—Commissioner of General Land Office held without authority to cancel certificate of entry.**

Where land had been occupied under certificate of entry from the United States for more than 48 years, the Commissioner of the General Land Office could not cancel the certificate on ground that the land previous to such entry had been acquired by the state under the swamp land grant of 1849, because the land belonged either to entryman under such certificate, if it was valid, or to the state, if the certificate was not valid, because of state's selection of such land under such act.

**9. Public lands ⚶152—Patent held void.**

Patent from state, dated in 1919, showing on its face that the entry was made under Act No. 104 of 1888, issued without patentee's compliance with Act No. 215 of 1908, prohibiting acquisition of state land by any method other than that prescribed in such act, *held* void.

Provosty and Sommerville, JJ., dissenting.

Appeal from Third Judicial District Court, Parish of Claiborne; J. E. Reynolds, Judge.

Petitory action by A. R. Albritton against

George T. Shaw. Judgment for defendant, and plaintiff appeals. Affirmed.

Cross & Moyse, of Baton Rouge, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, McEachern & Applebaum, of Homer, and Thigpen & Herold, of Shreveport, for appellee.

O'NIELL, J. Plaintiff appeals from a judgment rejecting his demand, in a petitory action, for a tract of land in the defendant's possession. The land is described as the N. E. ¼ of N. E. ¼ of section 25, in township 21 N., range 8 W., containing 40.37 acres. Being in the Claiborne oil field, the land had suddenly become very valuable when plaintiff obtained a patent for it from the state. He claims title under this patent, dated the 1st of February, 1919, and claims that the state acquired title by the swamp land grant of 1849. Defendant claims title by mesne conveyances from Thomas J. Harvey, who received a certificate of entry from the United States on the 17th of December, 1850. No patent was ever issued by the United States in pursuance of Harvey's certificate of entry. But he went into possession of the land and began cultivating it soon after purchasing it, and it has remained in cultivation continuously, by Harvey and in turn by those who acquired title from him, from the time of Harvey's purchase until the trial of this suit.

The land in question was selected by the state's agent, for approval under the swamp land grant, on the 8th of November, 1850, and was reported by the United States Surveyor General on the 7th of December, 1850; that is, 10 days before Harvey got his certificate of entry. But the state's selection was not approved by the Secretary of the Interior until the 6th of May, 1852; that is, more than four months after Harvey had obtained his certificate of entry. Harvey's

entry was canceled by order of the Commissioner of the General Land Office, on the 9th of May, 1899, after sending notice by registered letter addressed to Harvey's last known post office, which notice was not received by Harvey or his transferee, but was returned to the Land Office.

Under these facts, which are not disputed, defendant urges several defenses, in the alternative and in their order, as follows:

(1) That the land was not conveyed to the state by the swamp land grant of the 2d of March, 1849, and was therefore subject to sale by the United States on the 17th of December, 1850, when Thomas J. Harvey purchased and paid for it and received the final certificate, giving him the absolute right to a patent for the land, and that therefore the subsequent approval to the state did not divest the title which had been acquired by Thomas J. Harvey.

(2) That the order of the Commissioner of the General Land Office, of date the 9th of May, 1899, purporting to cancel Harvey's entry, was null and of no effect against the title held by Harvey's transferee, for two reasons: First, because the United States Land Department was without jurisdiction over the land after it had been sold to Harvey and thereafter approved to the state; and, second, because, even if the land department had had jurisdiction, the cancellation without notice to the owner of the land was without due process of law.

(3) That, if the approval to the state was originally valid, it was annulled by the act of Congress approved March 2, 1855 (Comp. St. §§ 4961, 4962, 6799 [43]), entitled "An act for the relief of purchasers and locators of swamp and overflowed lands," and by the act of Congress approved March 3, 1857 (Comp. St. § 4963), on the same subject, and by the Act No. 75 of 1904 of the General Assembly of this state, accepting and acquiescing in the aforesaid acts of Congress.

(4) That the state patent held by plaintiff was issued in violation of a prohibitory law of this state and was therefore absolutely null.

(5) That, if the state patent was not null, it was issued subject to the preference right afforded to defendant by the Act No. 21 of 1886, for having possessed and improved and cultivated the land.

Before considering or passing upon the merits of the title under which defendant holds possession of the land, we must determine whether plaintiff has exhibited a valid patent from the state; for, if the register of the state land office was prohibited by law, or was without authority, to issue the patent, it is null, and the state alone has an interest in ousting the defendant as possessor of this land.

But, before passing upon the question of validity of plaintiff's patent, we must consider and determine the question raised by plaintiff's counsel, whether the defendant should be permitted to plead the nullity of the state patent.

[1] Plaintiff's counsel invoke the rule that a land patent, signed and issued by the officers who had authority to issue it, and in due form, is conclusive evidence of the transfer of title, and its validity cannot be questioned in an action at law. But the essential element of that rule is the supposed authority of the officers who signed it to issue the patent. The two prerequisites of the right of an individual to attack the validity of a land patent are: First, that the individual making the attack had an equitable title or an inceptive right upon the land, antedating the issuance of the patent; and, second, that the attack is aimed at the jurisdiction or legal authority of the officers of the land department to issue the patent.

[2, 3] Of course, a mere trespasser, or possessor who has no other evidence of title than his occupancy of the land, is without

authority to question the validity of a patent for the land, in due form and signed by the proper officers. See Delta Duck Club v. Barrios, 135 La. 357, 65 South. 489. Nor can a person who had no equitable right previous to the issuance of a patent to some one else acquire the right to attack the validity of the patent by offering to purchase from the land department the land already conveyed by the patent. See Smith v. Crandall, 118 La. 1052, 43 South. 699; J. W. Frellsen & Co. v. Crandell, 120 La. 712, 45 South. 558; Bowman-Hicks Lumber Co. v. Industrial Lumber Co., 127 La. 1057, 54 South. 349. See, also, Chauvin v. Louisiana Oyster Commission, 121 La. 10, 46 South. 38.

But a person who had an equitable title at the time when the register of the land office issued a patent to some one else for the land—a person who might be adjudged the owner of the land if the officers of the land department were without authority to issue a patent for it to any one else—surely has an interest in attacking, and therefore a right to attack, the validity of the patent, on the ground that the officers of the land department had no legal authority to issue it. See State ex rel. Board of Commissioners v. Grace, Register of the State Land Office, 145 La. 962, 83 South. 206, in which all previous rulings upon this subject are reviewed and reconciled.

On the general rule, that a person who has an equitable interest in the question of validity of a land patent that has been issued to some one else may raise the question of jurisdiction or legal authority of the officers of the land department who issued the patent, the jurisprudence of the Supreme Court of the United States, and of this court, is in perfect harmony. Some of the decisions on this subject, both by the Supreme Court of the United States and by this court, would be pertinent to the question whether the defendant in this suit should be decreed the

owner of the land in contest, even though the state patent held by the plaintiff should not be decreed null. But we are not now concerned with the question whether the defendant might be adjudged the owner of this land, in an action brought by the state, if the officers of the land department were without authority to issue the patent to the plaintiff. It is sufficient, to permit the defendant, in possession of this land, to plead the nullity of plaintiff's patent, that defendant had an equitable title of sufficient importance to entitle him to demand that a suit to oust him shall be brought by one who can be adjudged the owner of the land if defendant himself should not be adjudged the owner. We will review the decisions on this subject merely to demonstrate that, in our opinion, the possession which the defendant and his authors have enjoyed for nearly seventy years is founded upon a claim of sufficient equity to demand that it shall be respected by any and every person except one who could be adjudged the owner of the land if the defendant should not be adjudged the owner of it.

In Landry v. Gautreau, 1 Rob. 372, the plaintiff acquired a patent, under an act of Congress giving to the proprietor of any tract of land fronting on a stream the preference of entering any vacant land of the same area, in the rear of and adjoining his front tract. The defendant held possession of the rear tract, at the time the patent issued to the plaintiff, and afterwards applied to the land office to purchase the rear tract under the pre-emption law. His application was granted and a receipt was issued for the price which he paid. The court maintained the defendant's right to plead the nullity of the plaintiff's patent, and adjudged it null and of no effect.

In Kittridge v. Breaud, which was before this court twice, 2 Rob. 40, and 4 Rob. 79, 39 Am. Dec. 512, it was said:

"In a contest between parties claiming lands sold by the United States, the courts of this state, whose powers are not limited by any distinction between law and equity, will look to the facts of the case, and do justice between the parties, though a patent may have been issued to one of them. The principle is well settled in the jurisprudence of this state, and in that of the courts of the United States, that an equitable right, originating before the date of the patent, whether founded on an earlier entry or otherwise, may be inquired into."

The paragraph last quoted was cited with approval in Thompson v. Mylne, 4 La. Ann. 211, in Climer v. Selby, 10 La. Ann. 183, in Copley v. Dinkgrave, 25 La. Ann. 580, and in Marks v. Martin, 27 La. Ann. 528.

In the opinion rendered in Kittridge v. Breaud, 4 Rob. 82, 39 Am. Dec. 512, it was said:

"The last point in the case is whether a patent given by the United States to the defendant is conclusive, as he alleges, upon the rights of the parties. We are aware that it has been decided, that a patent is the superior and conclusive evidence of legal title; until it has been issued, the fee is in the government, which, by the patent, passes to the grantee. [Bagnell v. Broderick] 13 Peters, 450 [10 L. Ed. 235]; [Wilcox v. McConnell] Id. 516 [10 L. Ed. 264]. This is technically true, and if there were a distinction between the law and equity powers of our courts, as there is in those of the United States, it is probable that we should, if sitting on the law side, be compelled to give effect to the patent. But we are not bound by such rigid rules, and as our administration of the law is to be tempered by equity, we feel authorized to look to the facts of the case, and to do justice between the parties.

"In [Godeau v. Phillips] 3 La. 62, this court said that the acts of Congress, which conferred on settlers on the public lands pre-emption rights, vested a legal title in the buyer, as soon as the purchase was made and the money paid, and that the government cannot take the land from them, and sell it to another. In [Harris v. Brown] 11 La. 90, and [Lefebore v. Comeau] Id. 323, it was held that a sale, without a patent, is evidence of title out of the government. It is divested by a sale, made in pursuance of an act of Congress, conferring authority on the register and receiver. Upon the same point, see [Newport v. Cooper] 10 La. 155; [Culliver v. Berge] 1 Robinson, 430. And the principle is well recognized in our ju-

risprudence, as well as in that of the courts of the United States, that where an equitable right, which originated before the date of the patent, whether by the first entry or otherwise, is asserted, it may be examined into. [Brush v. Ware] 15 Peters, 93 [10 L. Ed. 672]; [Bouldin v. Massie] 7 Wheaton, 149 [5 L. Ed. 414]."

In support of the doctrine that a person in possession of land under an equitable title antedating the issuance of a patent for the same land to some one else may plead that the officers of the land department had no legal authority to issue the patent, we will review the most pertinent of the decisions of the Supreme Court of the United States on this subject.

In Wright v. Roseberry, 121 U. S. 519, 7 Sup. Ct. 999, 30 L. Ed. 1048, it was said:

"The doctrine that all presumptions are to be indulged in support of proceedings upon which a patent is issued, and which is not open to collateral attack in an action of ejectment, has no application where it is shown that the land in controversy had, before the initiation of the proceedings upon which the patent was issued, passed from the United States. The previous transfer is a fact which may be established in an action at law as well as in a suit in equity. As we said in Smelting Co. v. Kemp, 104 U. S. 636, 641: 'When we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States and provision had been made by law for their sale. If they never were public property, or had previously been disposed of, or if Congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them, and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law may have been observed. The action of the department would, in that event, be like that of any other special tribunal not having jurisdiction of a case which it had assumed to decide. Matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law. In such cases the objection to the patent reaches beyond the action of the special tribunal, and goes to the existence of a subject upon which it was competent to act.'

"And again, in the same case, we said (page 646): 'A patent may be collaterally impeached in any action, and its operation as a conveyance defeated, by showing that the department had no jurisdiction to dispose of the lands; that is, that the law did not provide for selling them, or that they had been reserved from sale or dedicated to special purposes, or had been previously transferred to others. In establishing any of these particulars the judgment of the department upon matters properly before it is not assailed, nor is the regularity of its proceedings called into question; but its authority to act at all is denied, and shown never to have existed.'

" 'There are cases,' said Chief Justice Marshall, 'in which a grant is absolutely void; as where the state has no title to the thing granted, or when the officer had no authority to issue the grant. In such cases the validity of the grant is necessarily examinable at law.' Polk's Lessee v. Wendall, 9 Cranch, 87, 99. Indeed, it may be said to be common knowledge that patents of the United States for lands which they had previously granted, reserved for sale, or appropriated, are void. Easton v. Salisbury, 21 How. 426; Reichart v. Felps, 6 Wall. 160; Best v. Polk, 18 Wall. 112. It would be a most extraordinary doctrine if the holder of a conveyance of land from a state were precluded from establishing his title simply because the United States may have subsequently conveyed the land to another, and especially from showing that years before they had granted the property to the state, and thus were without title at the time of their subsequent conveyance. As this court said in New Orleans v. United States, 10 Pet. 662, 731: 'It would be a dangerous doctrine to consider the issuing of a grant as conclusive evidence of right in the power which issued it. On its face, it is conclusive, and cannot be controverted; but if the thing granted was not in the grantor, no right passes to the grantee. A grant has been frequently issued by the United States for land which had been previously granted, and the second grant has been held to be inoperative.' "

In Doolan v. Carr, 125 U. S. 624, 8 Sup. Ct. 1231, 31 L. Ed. 847, the court said:

"There is no question as to the principle that where the officers of the government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity, subject, however, at all times

to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority, if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void—void for want of power in them to act on the subject matter of the patent, not merely voidable; in which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided. The distinction is a manifest one, although the circumstances that enter into it are not always easily defined. It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue. The decisions of this court on this subject are so full and decisive that a reference to a few of them is all that is necessary. Polk v. Wendall, 13 U. S. (9 Cranch) 87 (3:665); New Orleans v. U. S., 35 U. S. (10 Pet.) 730 (9:599); Wilcox v. Jackson, 38 U. S. (13 Pet.) 509 (10:269); Stoddard v. Chambers, 43 U. S. (2 How.) 317 (11:282); Easton v. Salisbury, 62 U. S. (21 How.) 428 (16:182); Reichart v. Felps, 73 U. S. (6 Wall.) 160 (18:849); Best v. Polk, 85 U. S. (18 Wall.) 117 (21:807); Leavenworth, L. & G. R. R. Co. v. U. S., 92 U. S. 733 (23:663); Newhall v. Sanger, 1d. 761 (23:769); Sherman v. Buick, 93 U. S. 209 (23:849); St. Louis Smelting & Ref. Co. v. Kemp, 104 U. S. 636 (26:875); Steel v. St. Louis Smelting & Ref. Co., 106 U. S. 447 (27:226); Kansas Pac. R. Co. v. Dunmeyer, 113 U. S. 642 (28:1126); Reynolds v. Iron Silver Mining Co., 116 U. S. 687 (29:774). * * *

"The case of Wilcox v. Jackson, supra, was an action of ejectment brought against Wilcox, the commanding officer at Ft. Dearborn, to recover possession of land held by him in that character. This land was entered under a preemption claim by one Beaubean, who paid the purchase money and procured the register's receipt therefor. He afterwards sold and conveyed his interest to the lessor of the plaintiff. The question was whether the register's certificate, which seems to have been treated as sufficient evidence of title if it was valid, could be impeached by testimony that the land was not subject to entry. In the opinion of the

Supreme Court on this subject the language used in Elliott v. Peirsol, 26 U. S. (1 Pet.) 340 (7:170), is quoted with approval:

"'Where a court has jurisdiction it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment until reversed is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void.'

"The court then proceeds: 'Now to apply this: Even assuming that the decision of the register and receiver, in the absence of frauds, would be conclusive as to the facts of the applicant then being in possession, and his cultivation during the preceding year, because these questions are directly submitted to them; yet if they undertake to grant pre-emptions in land in which the law declares that they shall not be granted, then they are acting upon a subject-matter clearly not within their jurisdiction, as much so as if a court whose jurisdiction was declared not to extend beyond a given sum should attempt to take cognizance of a case beyond that sum.'

"In Stoddard v. Chambers, supra, which was an action of ejectment, an attempt was made to show that the defendant's patent was void. This court said in that case:

"'The location of Coontz was made in 1818, and his survey in 1818. At these dates there can be no question that all land claimed under a French or Spanish title, which claim has been filed with the recorder of land titles—as the plaintiff's claim had been—were reserved from sale by the acts of Congress above stated. This preservation was continued up to the 26th of May, 1829, when it ceased, until it was revived by the act of July 9, 1832, and was continued until the final confirmation of the plaintiff's title by the act of 1836. The defendant's patent was issued the 16th of July, 1832. So that it appears that, when the defendant's claim was entered, surveyed, and patented, the land covered by it, so far as the location interferes with the plaintiff's survey, was not "a part of the public land authorized to be sold." On the above facts the important question arises whether the defendant's title is not void. That this is a question as well examinable at law as in chancery will not be controverted. That the elder legal title must prevail in the action of ejectment is undoubted. But the inquiry here is whether the defendant has any title as against the plaintiff's. And there seems to be no difficulty in answering the question that he has not. His location was made on lands not liable to be thus appropriated, but

expressly reserved; and this was the case when his patent was issued. * * * No title can be held valid which has been acquired against law, and such is the character of the defendant's title, so far as it trenches on the plaintiff's. * * * The issuing of a patent is a ministerial act, which must be performed according to law. A patent is utterly void and inoperative which is issued for land that had been previously patented to another individual. * * * The patent of the defendant, having been for land reserved from such appropriation, is void; and also the survey of Coontz, so far as either conflicts with the plaintiff's title.' * * *

"In Best v. Polk, supra, the plaintiff, in support of his title in an action of ejectment, produced a patent from the United States, dated March 13, 1847, which seemed in all respects to be regular, granting the section of land described to James Brown in fee, who conveyed to Polk. The defendant Best, being in possession, attempted to defeat this patent by showing that the land in question was reserved under the treaties of 1832 and 1834 with the Chickasaw Nation of Indians, which authorized members of the tribe who desired to do so, and heads of families, to locate lands, which when so located were to be reserved from sale or other disposition by the United States. The defendant undertook to show that the land on which he was settled, which was the subject of controversy, had been properly located by an Indian, and was therefore not liable to sale at the time that Brown purchased it of the land officers. The court below rejected the evidence because of certain deficiencies in the certificate made by one Edmondson, a register of the land office at Pontotoc, who certified that the land in question was located as a reserve by a Chickasaw Indian, under the treaty, in July, 1839. This court reversed the judgment rendered in favor of plaintiff in the court below, holding that the certificate was sufficient and that it showed that under the treaty, and by the action of the Indian in settling upon it, and procuring a certificate of that fact from the proper officer, the land had become reserved in the language of the treaty, and that the patent under which the plaintiff claimed was therefore void—citing also Polk v. Wendall, supra, and Bagnell v. Broderick, 38 U. S. (13 Pet.) 436 (10:235).

"In the case of Reynolds v. Iron Silver Mining Co., 116 U. S. 687 (29:774), decided last year, which was an action to recover possession of part of a vein or lode of mineral deposit, plaintiff relied on a patent for a placer mine, and the contested vein was within the lines of its superficial area extended perpendicularly. The statute on which this patent was issued declared that it should not confer any right to veins known to exist within it at the time the grant was made. Defendants offered evidence to show that the vein in controversy was known to the patentee to exist at the time of his application for the patent.

"The Circuit Court charged the jury that because the defendants had shown no right whatever to the vein, but were in possession as naked trespassers, they could not, in defense of that possession, show this defect in plaintiff's title. But this court (the Chief Justice dissenting) held that this ruling was erroneous, and that, as in all other actions of ejectment, plaintiff must recover on the strength of his own title, and not on the weakness of defendants'."

In Knight v. United Land Association, 142 U. S. 176, 12 Sup. Ct. 262, 35 L. Ed. 979, affirming the doctrine of Doolan v. Carr, it was said:

"The case as presented by this record involves some very interesting questions. Ever since the decision in Polk v. Wendall, 13 U. S. (9 Cranch) 87 (3:665), it has been the settled law of this court that a patent is void at law if the grantor state had no title to the premises embraced in it, or if the officer who issued the patent had no authority so to do, and that the want of such title or authority can be shown in an action at law. Doe v. Winn, 24 U. S. (11 Wheat.) 380, 384 (6:500); Stoddard v. Chambers, 43 U. S. (2 How.) 284, 318 (11:269, 283); Easton v. Salisbury, 62 U. S. (21 How.) 426 (16:181); Reichart v. Felps, 73 U. S. (6 Wall.) 160 (18:849); Best v. Polk, 85 U. S. (18 Wall.) 112 (21:805); St. Louis Smelt. & Ref. Co. v. Kemp, 104 U. S. 636 (26:875); Steel v. St. Louis Smelt. & Ref. Co., 106 U. S. 447, 453 (27:226, 228); Wright v. Roseberry, 121 U. S. 488, 519 (30:1039, 1048); Doolan v. Carr, 125 U. S. 618, 625 (31:844, 847); and authorities there cited."

In the case of Lake Superior Ship Canal R. & I. Co. v. Cunningham, 155 U. S. 373, 15 Sup. Ct. 110, 39 L. Ed. 190, quoting and affirming St. Louis Smelting & Refining Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875, it was said:

"The railroad grant, the filing of the map of definite location, and the certification of the lands to the state were all before the canal

grant, so that at that time these lands were identified, separated from the public domain, appropriated to a particular purpose, and not to be considered as within the scope of any subsequent grant by Congress, unless in terms made so. General terms in a subsequent grant are always held to not include lands embraced within the terms of the prior grant. Even a patent may be declared void, if issued for lands theretofore reserved from sale. This is the settled rule of this court. Wilcox v. Jackson, 38 U. S. (13 Pet.) 498 (10:264); Stoddard v. Chambers, 43 U. S. (2 How.) 284 (11:269); Bissell v. Penrose, 49 U. S. (8 How.) 317 (12:1095); Minter v. Crommelin, 59 U. S. (18 How.) 87 (15:279); Easton v. Salisbury, 62 U. S. (21 How.) 426 (16:181); Reichart v. Felps, 73 U. S. (6 Wall.) 160 (18:849); Morton v. Nebraska, 88 U. S. (21 Wall.) 660 (22:639); Shepley v. Cowan, 91 U. S. 330 (23:424); Leavenworth, L. & G. R. Co. v. United States, 82 U. S. 733 (23:634); Newhall v. Sanger, 92 U. S. 761 (23:769); Sherman v. Buick, 93 U. S. 209 (23:849); St. Louis Smelt. & Ref. Co. v. Kemp, 104 U. S. 636 (26:875); Steel v. St. Louis Smelt. & Ref. Co., 106 U. S. 447 (27:226); Reynolds v. Iron Silver Min. Co., 116 U. S. 687 (29:774); Wright v. Roseberry, 121 U. S. 488 (30:1039); Doolan v. Carr, 125 U. S. 618 (31:844)."

In the case of Burfenning v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 163 U. S. 323, 16 Sup. Ct. 1018, 41 L. Ed. 175, the court said:

"It has undoubtedly been affirmed over and over again that in the administration of the public land system of the United States questions of fact are for the consideration and judgment of the Land Department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp land or not, saline land or not, mineral land or not, presents a question of fact, not resting on record, dependent on oral testimony; and it cannot be doubted that the decision of the Land Department, one way or the other, in reference to these questions is conclusive and not open to relitigation in the courts, except in those cases of fraud, etc., which permit any determination to be re-examined. Johnson v. Towsley, 80 U. S. (13 Wall.) 72 (20:485); St. Louis Smelt. & Ref. Co. v. Kemp, 104 U. S. 636 (26:875); Steel v. St. Louis Smelt. & Ref. Co., 106 U. S. 447 (27:226); Wright v. Roseberry, 121 U. S. 488 (30:1039); Heath v. Wallace, 138 U. S. 573 (34:1064); McCormick v. Hayes, 159 U. S. 332 (40:171).

"But it is also equally true that when by act of Congress a tract of land has been reserved from homestead and pre-emption, or dedicated to any special purpose, proceedings in the Land Department in defiance of such reservation or dedication, although culminating in a patent, transfer no title, and may be challenged in an action at law. In other words, the action of the Land Department cannot override the expressed will of Congress, or convey away public lands in disregard or defiance thereof. St. Louis Smelt. & Ref. Co. v. Kemp, 104 U. S. 636, 646 (26:875, 879); Wright v. Roseberry, 121 U. S. 488, 519 (30:1039, 1048); Doolan v. Carr, 125 U. S. 618 (31:844); Davis v. Wiebold, 139 U. S. 507, 529 (35:238, 246); Knight v. United Land Ass'n, 142 U. S. 161 (35:974).

"The case of Morton v. Nebraska, 88 U. S. (21 Wall.) 660 (22:639), is very closely in point. In that case the plaintiff held a patent for lands in Nebraska which were saline lands, and noted such on the field books, although the notes thereof had not been transferred to the register's general plats. The pre-emption act of September, 1841 (5 Stat. 456), declared that 'no lands on which are situated any known salines or mines shall be liable to entry.' Notwithstanding this prohibition, patents were issued for the lands, and it was held that they were absolutely void, the court saying, page 674 (645): 'It does not strengthen the case of the plaintiffs that they obtained certificates of entry, and that patents were subsequently issued on these certificates. It has been repeatedly decided by this court that patents for lands which have been previously granted, reserved from sale, or appropriated are void. The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved, and this want of power may be proved by a defendant in an action at law.'"

In Wisconsin Central Railway Co. v. Forsythe, 159 U. S. 60, 15 Sup. Ct. 1025, 40 L. Ed. 76, where the facts were similar to the facts of the case before us, it was said:

"After years have passed, and all the parties interested in the matter, other than the United States, have treated it as the property of the plaintiff, the defendant, relying upon a technical construction of the statutes, seeks to enter the tract, and thus, for no more than the paltry sum of $400, $2.50 per acre being the double minimum price of land within the limits of railroad grants, to obtain title to property worth, as we have seen, at least $8,000.

The railroad company, under this construction, loses the land it supposed it was entitled to, which it has treated as its own, and has helped to make valuable; the government does not receive the $8,000, nor indeed anything if the land be entered under the homestead laws, but a stranger comes in, who has done nothing to create that value, and appropriates it to his own benefit. The inequity of such a result is at least suggestive.

"But, further, it is urged that this question of title has been determined in the Land Department adversely to the claim of the plaintiff. This is doubtless true, but it was so determined, not upon any question of fact, but upon a construction of the law; and such matter, as we have repeatedly held, is not concluded by the decision of the Land Department. Johnson v. Towsley, 80 U. S. (13 Wall.) 72 (20:485); Shepley v. Cowan, 91 U. S. 330 (23:424); Quinby v. Conlan, 104 U. S. 420 (26:800); Doolan v. Carr, 125 U. S. 618, 624 (31:844, 846); Lake Superior Ship Canal, R. & I. Co., v. Cunningham, 155 U. S. 354 (39:183)."

In Noble v. Union River Logging Railroad Co., 147 U. S. 174, 175, 13 Sup. Ct. 274, 37 L. Ed. 123, the court recognized the right of an individual to raise the question of validity of a land patent, even collaterally, if such individual had an inceptive right, antedating the issuance of the patent, viz.:

"This distinction has been taken in a large number of cases in this court, in which the validity of land patents has been attacked collaterally, and it has always been held that the existence of lands subject to be patented was the only necessary prerequisite to a valid patent. In the one class of cases, it is held that if the land attempted to be patented had been reserved, or was at the time no part of the public domain, the Land Department had no jurisdiction over it and no power or authority to dispose of it. In such cases its action in certifying the lands under a railroad grant, or in issuing a patent, is not merely irregular, but absolutely void, and may be shown to be so in any collateral proceeding. Polk's Lessee v. Wendall, 9 Cranch, 87; Patterson v. Winn, 11 Wheat. 380; Jackson v. Lawton, 10 Johns. 23; Minter v. Crommelin, 18 How. 87; Reichart v. Felps, 6 Wall. 160; Kansas Pac. R. Co. v. Dunmeyer, 113 U. S. 629; United States v. Southern Pacific Railroad, 146 U. S. 570."

In the case of Rice v. Minnesota & Northwestern Railroad, 1 Black (66 U. S.) 375, 17 L. Ed. 147, the court quoted with approval Polk's Lessee v. Wendal, 9 Cranch, 87, 3 L. Ed. C65, and other appropriate decisions heretofore cited, and said:

"Notwithstanding those decisions, the question was presented to the court for the third time in the case of Patterson v. Winn, 11 Wheat. 388; and on that occasion this court, after referring to the previous decisions, said: 'We may therefore assume, as the settled doctrine of the court, that if a patent is absolutely void upon its face, or the issuing thereof was without authority, or prohibited by statute, or the state had no title, it may be impeached collaterally in a court of law in an action of ejectment.'"

The Legislature of this state has expressly recognized and affirmed the right of an individual to bring suit to annul a patent issued by the state. Act No. 62 of 1912 provides:

"That all suits or proceedings of the state of Louisiana, private corporations, partnerships, or persons, to vacate and annul any patent issued by the state of Louisiana, duly signed by the Governor of the state and the register of the state land office, and of record in the state land office, or any transfer of property by any subdivision of the state, shall be brought only within six years of the issuance of patent: Provided, that suits to annul patents previously issued shall be brought within six years from the passage of this act."

[4] According to the decisions heretofore cited, it would be a begging of the question to decide, before passing upon the question of validity of plaintiff's patent, whether the claim of the defendant, who holds possession under the certificate of entry that was issued to Thomas J. Harvey, should prevail over the claim of the state under the swamp land grant of 1849; for, if the state patent was issued in contravention of a prohibitory law, it is absolutely null. Rev. Civ. Code, art. 12.

The particular statute which defendant contends was violated by the register of the state land office, in issuing the patent to plaintiff, is the Act No. 21 of 1886. The first section of the act declares:

"That no purchase or entry of any public lands belonging to the state of Louisiana shall be allowed, when previous thereto such lands have been possessed or improved or cultivated by any person holding or claiming adversely to the party seeking to purchase or enter the same."

Section 3 of the statute describes the manner in which a person who has possessed or improved or cultivated any land belonging to the state may acquire a preference of entering the same, by filing his declaration in the land office. And the section concludes with this important proviso, viz.:

"Provided, that the omission to file such declaration shall not authorize the entry or location upon any lands belonging to the state, *or occupied, possessed or cultivated by a party or parties not seeking to make such entry or location.*" (Italics are ours.)

In section 5 of the statute is the significant statement that any actual settler who has filed the declaration referred to in section 3, *or who is in possession without having filed such declaration,* may enter the land so possessed—

"either by purchasing the same under the general state laws, or by entering the same under the provisions and conditions of the Homestead Act, being Act No. 21 of 1871."

The language of the statute, therefore, made it plain that, regardless of whether the person who had possessed or improved or cultivated the land might avail himself of his preference right of entering it, and regardless of his giving or failing to give any notice of an intention to enter the land, the register of the land office should have no authority to allow any one else to purchase or enter the land.

Of course, the statute had application only to lands owned by the state. But, in determining whether the officers of the land department were prohibited by statute to issue a patent to the plaintiff, we must assume that the land belonged to the state. If the land did not belong to the state, it was because of Harvey's purchase from the United States before it was approved to the state. Therefore we cannot consider the question of plaintiff's having a right of action without assuming that the land in contest belonged to the state from the time when plaintiff alleges that the state acquired title to the time of issuing the patent to plaintiff.

Assuming, then, that the land in contest was owned by the state, while Act No. 21 of 1886 was in force, the register of the state land office was forbidden to allow any one to purchase or enter it, except the party who had "occupied, possessed or cultivated" it.

The first contention of counsel for plaintiff, with regard to the Act 21 of 1886, is that it was repealed by the general repealing clause in the Act No. 215 of 1908. The act of 1908 does not in terms refer to the act of 1886, but repeals generally "all laws or parts of laws in conflict herewith." The act of 1908 canceled all applications "for the entry or purchase of public lands of the state, * * * to which patent or certificate of entry had not issued." And the statute declares that any person who desires to "enter or purchase" any lands belonging to the state shall deposit with the register of the land office $15, as evidence of his good faith, etc.; and that the land applied for shall then be offered for sale at public auction, after advertisement in the manner provided by the statute. The statute does not make any distinction between a *purchase* for cash and an *entry* with scrip. It merely forbids any entry or purchase of any public land of the state, except a purchase at public auction, after due advertisement, in the manner prescribed by the statute. Strange to say, the learned counsel for plaintiff concede this; for they say in their brief (using italics as we quote them), in answer to defendant's assumption that he should be protected in his possession, even without the benefit of the Act 21 of 1886:

"In answer to such an assumption, it is sufficient to say that, whether or not the Act 215 of 1908 repealed Act 21 of 1886, *it certainly took away from the public the right to acquire the public lands of the state by any method other than that prescribed by this act.*"

It is also conceded that the plaintiff in this case did not acquire title from the state by the method prescribed by the act of 1908. He did not comply with any of the requirements of the statute of 1908. The land was not offered for sale at public auction. Plaintiff's patent shows upon its face that the entry was made for a warrant for scrip that was issued under the provisions of Act 104 of 1888. That statute authorized the register of the state land office, when it was made to appear that a dual or double entry had been made, to cancel the invalid or erroneous entry and issue to the entryman a warrant therefor, locatable on other state lands of the same class that was originally entered.

Although we are not now concerned with the question, it may be assumed, without admitting that the plaintiff has a right of action, that the Act 215 of 1908 repealed those provisions of the Act 21 of 1886 which had accorded the defendant a preference right to enter the land which he and his authors in title have possessed and cultivated for seventy years. That is a question which concerns the state alone, if the plaintiff has no valid patent. It concerns the public only to the extent that any one desiring to enter the land might yet make application for its sale at public auction, in the manner provided by the Act 215 of 1908, if that act has entirely repealed the Act 21 of 1886.

It is certain that the Act 215 of 1908 did not confer upon the plaintiff any right which he did not already possess, to enter with scrip, or without an auction sale in conformity with the act, any land belonging to the state. It is also certain that the statute of 1908 did not divest the plaintiff, or any holder of scrip that was issued pursuant to the Act 104 of 1888, of a vested right to enter upon the land in contest; because no one, except perhaps the defendant or his authors in title, had such right after the enactment of the statute of 1886. That statute was in force when the Act 104 of 1888 was adopted and when the scrip was issued in pursuance thereof. There is no need for determining or considering the question whether the Act 215 of 1908 could, without violating a constitutional right, deprive the holder of a warrant or scrip that was issued pursuant to the Act 104 of 1888 of his right to enter upon any land that he had a right to enter upon before the act of 1908 was adopted. It is sufficient to say that no one, except perhaps the defendant or one of his authors in title, had such vested right with regard to the land in contest, which the defendant and his authors in title had possessed and cultivated for nearly half a century when the statute of 1908 was enacted.

[5] Plaintiff's counsel argue that the Act 21 of 1886, while in force, did not have application to land that was subject to entry, but had application only to land that was, for want of approval or survey, not yet open to entry. We see no basis whatever for the argument. The first sentence in the statute forbids any entry or purchase of any public lands belonging to the state, when such lands have been possessed or improved or cultivated by any person holding or claiming adversely to the party seeking to purchase or enter the same. How can it be presumed that the Legislature, in enacting a statute for the protection of actual settlers and of persons who had possessed or improved or cultivated the public lands of the state, intended to confine the prohibition, against allowing any other person to enter or purchase such lands, to lands that were not subject to entry or purchase?

[6] The next contention of counsel for plaintiff is that the Act 21 of 1886, when it

was in force, had application only to land that was occupied by an "actual settler," or resident upon the land. Counsel cite the decision in Munday v. Muse, 15 La. Ann. 237, where the term "actual settler," as used in a statute of 1852 and in a statute of 1853, was defined to be a person who actually resided upon the land. The statute of 1852 and the statute of 1853 did not in terms apply to any one except an "actual settler." The Act 21 of 1886, on the contrary, in its title and in its text, expressly refers, not only to lands that have been occupied by an "actual settler," but also to lands that have been possessed or improved or cultivated by any one holding or claiming adversely to any person who may seek to purchase or enter the same. There is no room for interpretation or construction of the law in that respect.

[7, 8] The last contention of counsel for plaintiff, on this issue in the case, is that the defendant and his authors in title, who possessed and cultivated the land in contest, were without such an equitable title or right as to prevent any other person's purchasing or entering the land, while the Act 21 of 1886 was in force. The decisions already cited leave no doubt that the prohibition contained in the statute of 1886 was applicable to the land that was possessed and cultivated by the defendant and his authors in title, holding and claiming adversely to any one who might seek to enter or purchase the land, so long as the statute of 1886 was in force. The title to the land, or rather the question whether the state of Louisiana or a transferee from Thomas J. Harvey was the owner of this land, was not affected by the order of the Commissioner of the General Land Office, purporting to cancel Harvey's entry, in 1899. It is certain that the land did not then belong, and had not for 48 years belonged, to the United States. If the approval to the state was valid, notwithstanding Harvey's entry, the land belonged

148 LA.—15

to the state. If Harvey's entry was valid, notwithstanding the state's prior selection of the land, the land belonged to Harvey. The question, whether the title conveyed by the approval to the state or the title conveyed by the certificate of entry issued to Harvey should prevail, was not within the jurisdiction of the Commissioner of the General Land Office, after the United States had finally disposed of the land. See Moore v. Robbins, 96 U. S. 530, 533, 24 L. Ed. 848. We see no reason, therefore, for considering the question whether the order of the Commissioner of the General Land Office, purporting to cancel Harvey's certificate of entry, without giving him or his transferee actual notice and an opportunity to be heard, would have been due process of law, if the Commissioner had had jurisdiction.

[9] Our conclusion is that the patent held by the plaintiff in this case was issued in' violation of a prohibitory law and is therefore null.

The judgment appealed from is affirmed, at appellant's cost.

PROVOSTY and SOMMERVILLE, JJ., dissent.